951 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gladys B. ASHWORTH, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 91-5699.
 United States Court of Appeals, Sixth Circuit.
 Dec. 30, 1991.
 
 Before KENNEDY and BOGGS, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Gladys B. Ashworth appeals a district court ruling that upheld an Administrative Law Judge's decision denying social security benefits to her. She maintains that there is not substantial evidence to support the ALJ's findings that she was able to return to her previous employment. We affirm the district court.
 
 
 2
 * Gladys B. Ashworth worked with wave machines (a soldering machine used to make circuit boards), crimping machines, and tow motors, until she injured her back while operating a tow motor. She claims that she has been unable to work since April 1, 1985 on account of this injury. However, she worked part-time as a cashier at a CeeBee Foods Store from February 1987 through February 1988, making approximately $75 per week. At the store, she was apparently permitted to sit and stand as she wished; however, she does not believe she can still do this job, particularly since it involved stocking the shelves. Her manager at the store agreed with this conclusion. She also operates a ceramic shop at which she works two hours a day; the shop has netted her approximately $900 per year, although she states it has not been profitable.
 
 
 3
 Ms. Ashworth filed an application for disability insurance benefits, which was denied initially and on reconsideration. She requested a hearing, which was held on May 4, 1989. Several medical reports were introduced during the course of these proceedings. Dr. William J. Jekot, an orthopedic surgeon in Murfreesboro, Tennessee, began examining Ms. Ashworth in November 1984. He reported that for one and one-half years she had a history of intermittent mechanical low back pain. At the time he first saw her, she had noted sudden attacks of pain upon lifting an object. His examination revealed a decreased range of motion of the lumbar spine with difficulty in performing voluntary movements (dyskinesia); his first impression of her condition was acute lumbar syndrome. He prescribed therapy that produced some improvement, and she returned to work on November 26, 1984. However, on December 21, 1984, she returned with a sharp exacerbation of her lower back, and reported an injury at work loading metal shelves. Over the next few months she showed gradual improvement and returned to work in the middle of February 1985.
 
 
 4
 Dr. Jekot examined Ms. Ashworth again on April 3, 1985; she had suffered another back injury at work ten days previously. Dr. Jekot diagnosed lumbar syndrome without sign of spinal nerve irritation or deficit. He changed her medication, placed her on an exercise program, and advised her to refrain from work until she became more comfortable. He saw her again on August 30, 1985, when she was doing better, though with occasional right leg pain. At this time, he believed her to have a herniated disc.
 
 
 5
 Dr. Jekot referred Ms. Ashworth to Dr. William Davis, a Nashville orthopedic surgeon. Dr. Davis examined her in early December 1985, and concluded that she had S-1 nerve root compression, although he could not see this on a myelogram or a computerized axial tomography (CAT) scan. He did not think she would be a good candidate for surgery because her pain had persisted for over a year and some of her pain had a nonorganic source. Dr. Davis referred Ms. Ashworth to the Middle Tennessee Back Care Center in Brentwood, which conducted medical and psychological evaluations on December 4, 1985, and issued a report on November 4, 1986. Its doctors diagnosed chronic low back pain, radicular and mechanical, with degenerative joint disease aggravation and chronic pain syndrome. Dr. Thomas C. Whitfield, the Center's Assistant Medical Director, concluded that Ms. Ashworth would benefit greatly from the Center's comprehensive rehabilitation program on an out-patient basis. The Center's psychological evaluation found that she was anxious to restore her physical abilities so that she could return to gainful employment.
 
 
 6
 Because of delays in having her treatment paid for by worker's compensation, her program at the Center did not begin until April 1987. By this time, the Center had been renamed the Comprehensive Medical Rehabilitation Center. The Center discharged Ms. Ashworth on June 5, 1987, after a six-week program. In his discharge summary, Dr. William R. Halliday, the Center's Medical Director, noted that she had made significant progress in all areas, particularly during a two-week full-time program. However, he concluded that "her ability to make further progress was limited by the coexistence of significant low back disease and sacroiliac abnormality." He also found that she regressed upon returning to a commuter program while attempting to work. He determined that "she is not able to tolerate her present job [at CeeBee Foods] on even a part-time basis for a prolonged period. She can do this for a few days at a time ... but with a great deal of pain and deterioration from continuing to attempt to do this over a period of more than a few days." However, as noted earlier, she continued working at CeeBee Foods until February 1988.
 
 
 7
 On January 26, 1988, Dr. Jekot's deposition was taken in Ms. Ashworth's worker's compensation case. He concluded that she could work only fifteen to twenty hours a week, was limited to lifting no more than five pounds, and could not perform any repetitive bending or twisting. In a medical assessment concerning work-related activities, he marked that she could lift and carry ten pounds for one-third of the workday or no more than five pounds frequently for two-thirds of a workday. He also marked that she could stand and/or walk for three hours total during a workday and for one and one-half hours without interruption. He found that she could sit for no more than three hours during the workday and no more than one hour without interruption.
 
 
 8
 In November 1988, at the request of the Secretary, Ms. Ashworth was examined by Dr. David W. Gaw, a board-certified Nashville orthopedic surgeon. Dr. Gaw diagnosed degenerative lumbar disc disease with radiculopathy on the right. He noted that she could lift and/or carry twenty pounds for about one-third of an eight-hour workday, or that she could frequently lift and carry ten pounds for about two-thirds of a workday. He also felt that she could stand or walk with normal breaks for at least two hours in the workday, and that she could sit for about six hours in an eight-hour workday.
 
 
 9
 Dr. S. Frank Carter, Ms. Ashworth's family physician, also submitted a medical assessment form dated May 12, 1989. He indicated that Ms. Ashworth could lift no more than five pounds occasionally and nothing frequently, and that she could stand and walk no more than two hours in an eight-hour day or a half-hour at a time.
 
 
 10
 Finally, Ms. Ashworth submitted a report from George E. Copple, a vocational expert. Based upon the Wechsler Adult Intelligence Scale test, he concluded that Ms. Ashworth's I.Q. was 81. He also administered a Wide Range Achievement Test to her, and determined that she was considerably limited in the range of jobs she could perform. Reviewing the appraisals by the treating physicians, he concluded that she had a 65-70 percent occupational disability and that her occupational outlook was bleak.
 
 
 11
 On June 23, 1989, the ALJ issued a decision denying benefits. He gave less weight to Dr. Jekot's findings regarding residual functional capacity because the findings were based primarily upon Ms. Ashworth's history, and because Dr. Jekot had performed no formal functional testing. He discounted Dr. Carter's findings, which he found to be inconsistent with the reports of other physicians. He also stated that there was no showing that Dr. Carter had actually treated Ms. Ashworth. The ALJ was not impressed by Mr. Copple's conclusions, since "the psychologist [Mr. Copple] has made conclusions about her functional capacity ... which are not consistent with the conclusions in this case." While the ALJ concluded that Ms. Ashworth had a significant back condition, he did not believe that it "would preclude the claimant from performing essentially light exertion."
 
 
 12
 In reaching this conclusion, the ALJ relied upon Dr. Gaw's findings concerning lifting and carrying capacity. However, he concluded that Dr. Gaw's statements regarding walking, standing, and sitting limitations were inconsistent with his findings and Ms. Ashworth's own testimony. In fact, the ALJ placed significant weight on Ms. Ashworth's statements:
 
 
 13
 At the hearing, the claimant indicated that she walks two to three miles a day, can sit an hour at a time, has operated a ceramic shop ... and has worked part-time at other jobs. She also has acknowledged that she drives, keeps a house, and mows the yard. The undersigned finds that such activities are consistent with the ability to perform at least light exertion and demonstrate the ability to perform light activity.
 
 
 14
 On February 20, 1990, the Appeals Council refused to grant Ms. Ashworth's request for review. Having exhausted her administrative remedies, she filed this suit in the Middle District of Tennessee. The district court assigned this case to a magistrate, who filed a report and recommendation on January 15, 1991. The magistrate concluded that the ALJ's ruling was backed by substantial evidence, and recommended that Ms. Ashworth's case be dismissed. The district court adopted this report in full on April 3, 1991. Ms. Ashworth appeals to this court.
 
 II
 
 15
 When reviewing the Secretary's decision, this court determines whether his findings are supported by substantial evidence in the record taken as a whole. 42 U.S.C. § 405(g); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir.1990). A mere scintilla of evidence will not suffice; substantial evidence is what a reasonable mind might accept as adequate to support a conclusion. Walker v. Secretary of Health and Human Serv., 884 F.2d 241, 244 (6th Cir.1989). If supported by substantial evidence, the Secretary's decision must stand, even if this court construes the facts differently. Tyra v. Secretary of Health and Human Serv., 896 F.2d 1024, 1028 (6th Cir.1990). A reviewing court cannot try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 
 16
 Ms. Ashworth notes that the Secretary recognizes that she had not engaged in substantial gainful activity since April 1, 1985. Thus, in order to make out a prima facie case, she need merely demonstrate that she can no longer perform her past relevant work. Lashley v. Secretary of Health and Human Serv., 708 F.2d 1048, 1054 (6th Cir.1983). Once she has done so, the burden then shifts "to the Secretary to demonstrate that there exist[s] other substantial activity which [the plaintiff] could perform." Ellis v. Schweicker, 739 F.2d 245, 248 (6th Cir.1984).
 
 
 17
 Ms. Ashworth insists that she has made out her prima facie case. The ALJ described her past work as "light exertion." The Secretary's regulations define light work as lifting no more than twenty pounds at a time with frequent lifting or carrying or objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b). In Social Security Ruling 83-10, the Secretary explained the requirements for light work as follows:
 
 
 18
 "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.
 
 
 19
 The ALJ found that Ms. Ashworth met these requirements and could perform such work. She maintains that the evidence simply does not support such a finding. Dr. Gaw limited her standing or walking to two hours in an eight-hour day. Dr. Jekot limited her to three hours of standing or walking in an eight-hour day. Dr. Carter limited her to two hours of standing or walking. Dr. Halliday opined that she could not compete in the labor market, because her pain would prevent her from sustaining work on a regular basis. As noted above, Drs. Jekot and Carter also concluded that she could not perform the necessary lifting or carrying required by light work.
 
 
 20
 Mr. Copple, who focused primarily upon worker's compensation issues, concluded that "she is obviously limited in the range of jobs she can hope to perform." He also stated that "[s]he does not have the basic capabilities and the literacy level to expect to benefit from the programs available through Vocational Rehabilitation." Ms. Ashworth avers that Mr. Copple's opinion should receive further weight because worker's compensation makes no allowance for pain as such. The Social Security Act, on the other hand, allows pain alone to support a finding of disability, as long as
 
 
 21
 (1) [There is] objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.
 
 
 22
 Duncan v. Secretary of Health and Human Serv., 801 F.2d 847, 852-53 (6th Cir.1986); see also 42 U.S.C. § 423(d)(5)(A). Besides the medical evidence, Ms. Ashworth's description of her pain is supported by a statement from her former manager at the CeeBee Food Store.
 
 
 23
 Ms. Ashworth asserts that the ALJ erred by failing to give sufficient weight to these medical findings. She also complains that he failed to consider the conclusions of Dr. Davis. She also notes that her own testimony was consistent with their conclusions. She stated, "I can't sit no six hours a day, no, sir. And I can't stand no two hours at a time." She also claimed, "I couldn't lift no twenty pounds at all," and explained "I can lift ten pounds but it hurts like heck and I don't lift ten pounds if I can get out of it and I haven't since I left the store down there."
 
 
 24
 Ms. Ashworth argues that the ALJ simply rejected all of the physician reports of the record, including the one physician hired by the Secretary. She claims that his treatment of this evidence violates basic principles of social security law. "The expert opinions of a treating physician as to the existence of a disability are binding on the fact-finder unless contradicted by substantial evidence to the contrary.' " Hardaway v. Secretary of Health and Human Serv., 823 F.2d 922, 927 (6th Cir.1987) (quoting Bastien v. Califano, 572 F.2d 908, 912 (2d Cir.1978)). "While the ALJ [is] not bound by the opinions of plaintiff's treating physicians, he was required to set forth some basis for rejecting these opinions." Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986). She also protests that the ALJ failed to give sufficient weight to her claims of disabling pain.
 
 
 25
 Considering this medical evidence, she argues, the ALJ placed too much weight on her demeanor at the hearing. In his opinion, the ALJ pointed out that
 
 
 26
 at the hearing the claimant sat comfortably, smiled, responded easily and quickly to questions and did not show the type of level of discomfort one would expect an individual to portray if they were experiencing the pain claimant has alleged. Thus, the undersigned has placed less credence in the claimant's objective statements and pain and limitation and greater credence in the objective findings.
 
 
 27
 She accuses the ALJ or applying a "sit and squirm" test that violates Harris v. Heckler, 756 F.2d 431, 436 (6th Cir.1985), which held that "if there is uncontroverted evidence in the record which clearly corroborates a claimant's assertions of pain, it would be wrong for the ALJ to reject this testimony simply because of the claimant's demeanor." See also Weaver v. Secretary of Health and Human Serv., 722 F.2d 310, 311 (6th Cir.1983) ("we cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing") (emphasis added).
 
 
 28
 Next, Ms. Ashworth outlines the alleged errors made by the district court in adopting the ALJ's report. She contends that the magistrate judge failed to consider properly the lengthy relationship with Dr. Jekot. The ALJ discounted Dr. Jekot's findings because he did not perform formal functional tests. Ms. Ashworth argues, however, that under this reasoning all the doctors other than Dr. Halliday and others at the Comprehensive Medical Rehabilitation Center would be discredited, as none of them gave her formal functional tests. If this were done, she insists, her position would be greatly strengthened, since Dr. Halliday concluded that "[h]er prognosis is for no further improvement."
 
 
 29
 Ms. Ashworth also maintains that the magistrate made a major mistake by agreeing with the ALJ's decision not to pay much attention to Dr. Carter's findings. The magistrate stated, "[t]here is no evidence that Dr. Carter has ever examined this plaintiff or is familiar with any of the clinical evidence and findings with regard to her low back." Ms. Ashworth says that this is simply wrong. She testified that she had seen Dr. Carter. She also submitted forms to the ALJ stating that Dr. Carter told her that "all of [her] problems are coming from [her] back and [her] nerves." Another form demonstrated that Dr. Carter had prescribed medicine for her pain. Such an obvious mistake, she argues, indicates that judicial review was not meaningfully afforded to her in this case.
 
 
 30
 Ms. Ashworth also complains that the magistrate allowed the ALJ to fragment Dr. Gaw's assessment. As noted earlier, the ALJ fully accepted Dr. Gaw's findings with respect to lifting and carrying, but not with respect to walking, standing, and sitting. Banks v. Bowen, 672 F.Supp. 310, 318 (N.D.Ill.1987), held that an ALJ "cannot rationally reject [a physician's] entire report [because it is unsupported by objective findings] and then proceed to pick out one finding from that report to support this conclusion (at least not without some sort of explanation)."
 
 
 31
 Ms. Ashworth also criticizes the magistrate for quoting the following passage from the ALJ's opinion without questioning it. "It is also noteworthy to point out that one of her treatment orthopedists commented that much of her problem is probably nonorganic in nature. Thus, the implication she is exaggerating her pain and is not experiencing the degree of pain she has alleged." Here the ALJ made another factual mistake. He is apparently referring to the report of Dr. Davis, who stated that Ms. Ashworth was suffering "some nonorganic pain." Dr. Davis's report appears never to imply that Ms. Ashworth was malingering or exaggerating her problem.
 
 
 32
 The magistrate also stated that: "Dr. Gaw found [Ms. Ashworth] could return to light work and plaintiff's testimony and the clinical evidence as found by the ALJ supports this finding." In reality, as noted earlier, Dr. Gaw found that Ms. Ashworth could stand and/or walk "at least 2 hours in an 8-hour workday." As noted earlier, this is insufficient to constitute "light work" under 20 C.F.R. § 404.1567(b) and Social Security Ruling 83-10. Ms. Ashworth contends that this shows a failure to apply the proper residual functional capacity to the facts, and argues that it requires reversal. Finally, Ms. Ashworth argues that the ALJ's measurement of the facts is so flawed that he must be applying an improper legal standard, and argues that his ruling could be struck down on that ground alone. See Branham v. Gardner, 383 F.2d 614 (6th Cir.1967).
 
 
 33
 While we recognize that the ALJ and the magistrate could have been more careful in their handling of the facts, we believe that the record contains substantial evidence that supports the Secretary's decision that Ms. Ashworth was capable of returning to her past relevant light work. "As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain." Blacha v. Secretary of Health and Human Serv., 927 F.2d 228, 231 (6th Cir.1990); see also Crisp v. Secretary of Health and Human Serv., 790 F.2d 450, 453 (6th Cir.1986). We agree with the secretary that Ms. Ashworth's testimony regarding her daily activities contradicts her allegations of disabling pain and demonstrates her ability to perform light work activities.
 
 
 34
 In her testimony before the ALJ, Ms. Ashworth stated that she walked two to three miles a day, mowed her lawn, and drove a car. She further testified that she spent from two hours a day up to twenty hours a week on her ceramics business, in which she lifted ceramic molds that weighed five to ten pounds. Even if work performed is not substantial gainful activity, the regulations recognize that it "may show that you are able to do more work than you actually did." 20 C.F.R. § 404.1571. Thus, the ALJ could properly consider Ms. Ashworth's work at her ceramics shop. Furthermore, in September and October 1988 reports, she stated that she could not lift over twenty-five pounds and that she did all of her household chores except make her bed and mop floors; she drove without restriction, stopping every two hours to stretch. In April 1987, she was using an exercise bicycle and a "gut buster" to stay in shape and walking approximately one mile. She also stated that she could drive for as long as four hours, alternating her feet on the pedals.
 
 
 35
 We also agree with the ALJ that Ms. Ashworth's treatment was too episodic and sporadic for an individual afflicted with constant and debilitating pain. Two months after her injury in April 1985, she returned to work as a tow motor operator. She continued at this job until November 1985. Even after the Middle Tennessee Back Care Center decided she would be an excellent candidate for their program, she did not enter this program for sixteen months due to complications involving worker's compensation. During this period, her only medical attention came from four visits with Dr. Jekot. After completing the program, she did not return to Dr. Jekot until January 19, 1988. Finally, her only other treatment was apparently a visit to Dr. Carter in April 1989.
 
 
 36
 We also note the conservative treatment and mild medications given to Ms. Ashworth. She received two epidural steroid injections, and was otherwise treated with medication, exercises, and a heating pad. Dr. Davis specifically recommended against surgery and felt that a more conservative approach was appropriate. Ms. Ashworth also claimed only occasional use of medication, such as aspirin and Tylenol. In the administrative hearing, she testified that "the Tylenol kind of made me groggy but I quit taking those and went to those pain--well kind of like an aspirin, they're something like Tylenol, not only as strong as, they're not as strong as the Tylenol 3." She testified that this medication did not fully relieve her pain, but did make it bearable. Ms. Ashworth insists that her doctors made a conscious choice to keep her on light medication to avoid risking addiction. But in Blacha v. Secretary of Health and Human Serv., 927 F.2d 228, 231 (6th Cir.1990), we stated that the claimant's "use of only mild medications (aspirin) undercuts complaints of disabling pain." See also Maher v. Secretary of Health and Human Serv., 898 F.2d 1106 (6th Cir.1989) ("Mild medications taken by a claimant do not bear out allegations of severe disabling pain.").
 
 
 37
 As for the doctors' conclusions concerning disability, we note that the Secretary is not required to accept a doctor's conclusory determinations. "The determination of disability is the prerogative of the Secretary and a physician's opinion is not conclusive of the ultimate fact of disability." Miller v. Secretary of Health and Human Serv., 843 F.2d 221, 224 (6th Cir.1988). "The opinion of a treating physician must be based on sufficient medical data." Young v. Secretary of Health and Human Serv., 925 F.2d 146, 151 (6th Cir.1990). This court has rejected unsupported medical conclusions on several occasions. See, e.g., Crouch v. Secretary of Health and Human Serv., 909 F.2d 852, 856 (6th Cir.1990); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir.1988). In this case, as noted earlier, the medical evidence was not supported by other facts presented at the hearing. Ms. Ashworth's activities, her sporadic and conservative treatment, and her demeanor before the ALJ all weigh heavily against the doctors' reports.
 
 
 38
 The responsibility for deciding residual capacity rests with the ALJ. 20 C.F.R. § 404.1546. "[T]he ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject determinations of such a physician when good reasons are identified for not accepting them." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir.1988); see also King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). As noted earlier, we must accept the ALJ's conclusion if it is supported by substantial evidence, regardless of whether we would resolve the factual dispute differently. Tyra v. Secretary of Health and Human Serv., 896 F.2d 1024, 1028 (6th Cir.1990).
 
 
 39
 Finally, we believe that any errors noted by Ms. Ashworth had little impact on this case. Even if Dr. Davis said Ms. Ashworth had "some" nonorganic pain rather than "much" nonorganic pain, any difference in these statements was insignificant in its overall effect. We do not believe that the ALJ merely applied a "sit and squirm" test, but rightfully included and weighed demeanor evidence as part of a complete analysis of the evidence. "The ALJ is charged with the responsibility of observing the demeanor and credibility of witnesses therefore his conclusions should be highly regarded." Bradley v. Secretary of Health and Human Serv., 862 F.2d 1224 (6th Cir.1988); see also Villarreal v. Secretary of Health and Human Serv., 818 F.2d 461, 463 (6th Cir.1987).
 
 III
 
 40
 Besides her general disagreement with the Secretary's decision, Ms. Ashworth emphasizes three specific errors that she argues should prevent it from being accepted. First, she contends that the Secretary has ignored Dr. Halliday's opinion and the clinical findings of the Comprehensive Medical Rehabilitation Center without showing valid grounds for doing so. Second, she argues that the Secretary cannot hold that a claimant can do a job that no longer exists. Specifically, she refers to an affidavit she has filed in which she states that the wave machine has been phased out and has not been used for the past ten years, to the best of her knowledge. Thus, she reasons, the Secretary is asking her to do the impossible by returning to a non-existent job. See Carter v. Secretary of Health and Human Serv., 834 F.2d 97, 98 (6th Cir.1987) (ALJ should be reversed for misapplying "Dictionary of Occupational Titles"). She also insists that her feet cause her too much pain to operate a crimping machine.
 
 
 41
 Finally, she attacks the ALJ's explanation that Dr. Carter's statement was given less weight because "Dr. Carter is not a listed physician in the American [sic] Directory of Physicians and also since the record does not reflect any notes of treatment or care by Dr. Carter in the record[.]" Apparently, the ALJ could not find Dr. Carter in the 1985 edition of the Directory. Ms. Ashworth contends that neither the Social Security Act or its regulations requires that all treating physicians be listed in this Directory. There is apparently little doubt as to Dr. Carter's qualifications, and Ms. Ashworth contends that the ALJ's failure to make more of an effort to determine that one of her witnesses was qualified demonstrates an unfair attitude toward her claim.
 
 
 42
 We reject these three contentions. We agree that the ALJ did not specifically address Dr. Halliday's statement that Ms. Ashworth could not work in a competitive market even on a half-time basis. However, the record indicates that the ALJ attempted to send medical assessment forms to the doctors at the Comprehensive Medical Rehabilitation Center. In his opinion, the ALJ found that these doctors could not be reached "because the address given for the center and for the location of the [doctors] were not correct and could not be determined from sources usually used such as the telephone book and medical directories." Thus, the ALJ knew of the reports, but evidently found that the evidence was not credible. An administrative opinion need not be flawless, as we recognized in Higgs v. Bowen, 880 F.2d 660 (6th Cir.1988):
 
 
 43
 Mrs. Higgs also argues that the Appeals Council erred by failing to spell out in its opinion the weight it attached to her and her husband's testimony. We agree that the Council should have been more thorough and articulate in its decision. However, the Council's opinion states that it "considered the entire record which was before the ALJ, including the testimony at the hearing." The Council's lengthy discussion of the medical evidence makes it clear that it did not credit any testimony at variance with the objective record. That the Council did not explicitly say it would not accept hearing testimony at face value is not reversible error under the circumstances of this case.
 
 
 44
 880 F.2d at 864. In any event, the magistrate noted Ms. Ashworth's treatment at the back care center, including Dr. Halliday's statement that she could not work on even a part-time basis, and still found sufficient evidence to support the ALJ's findings.
 
 
 45
 We also believe that Ms. Ashworth retains the capacity to work as a crimping machine operator. Mr. Copple stated that as a crimping machine operator, Ms. Ashworth "sat but used a foot pedal, alternating the use of her feet as desired." The idea that she can perform this work is supported by an October 1988 report in which Ms. Ashworth testified to driving without restriction, although she stopped every two hours to stretch. A need to stretch would not render Ms. Ashworth incapable of working, for under Social Security Ruling 83-12, "[p]ersons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work."
 
 
 46
 Furthermore, Ms. Ashworth's claim that no one is using wave machines does not satisfy her burden of proving she cannot return to her past work. She is not a vocational expert. Mr. Copple's report did not indicate that this job was obsolete. Another report by the Tennessee Department of Human Services described her as an "electronic assembler" and stated that she could return to this job. Thus, her affidavit is contradicted by these two reports.
 
 
 47
 Finally, the ALJ had other reasons for rejecting Dr. Carter's findings besides his inability to find him in a medical directory. In his report, the ALJ stated that "Dr. Carter's report is inconsistent with the reports of the other physicians[.]" We also note that although Ms. Ashworth's attorney agreed to submit Dr. Carter's treatment records to the ALJ within twenty days of the hearing, he failed to do so, and no explanation for this failure has been given.
 
 IV
 
 48
 We wish to emphasize that it is not this court's job to weigh all of the evidence and come to an independent conclusion regarding whether Ms. Ashworth should receive benefits. We merely study the record to insure that substantial evidence supports the Secretary's decision. Because we find such evidence in this case, the district court's decision is AFFIRMED.