Ronald M. TYRA, Plaintiff–Appellant,

v.

SECRETARY OF HEALTH & HUMAN SERVICES, Defendant–Appellee.

No. 89–1581.

United States Court of Appeals, Sixth Circuit.

Submitted Feb. 1, 1990.

Decided Feb. 23, 1990.

Matthew F. Taylor, Saginaw, Mich., for plaintiff-appellant.

Donna Morros Weinstein, Chief Counsel, Denise S. Spencer, Dept. of Health and Human Services, Office of Gen. Counsel, Region V, Chicago, Ill., Michael Hluchaniuk, Asst. U.S. Atty., Bay City, Mich., for defendant-appellee.

Before MILBURN and NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Claimant Ronald M. Tyra appeals from the judgment of the district court in favor of the Secretary of Health and Human Services (Secretary) affirming the Secretary's denial of Tyra's claim for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act as amended. For the following reasons we affirm the judgment of the district court.

I.

Claimant filed his application for disability insurance benefits on March 11, 1986, alleging that he became disabled and unable to work on November 1, 1984, due to lower back pain. The Secretary denied claimant's application in April, 1986. The Secretary denied claimant's application upon reconsideration in June, 1986. Dissatisfied with the Secretary's determination, the claimant requested a hearing before an Administrative Law Judge (ALJ). This hearing was held before Administrative Law Judge Alfred H. Varga on October 10, 1986.

On November 24, 1986, the ALJ issued his decision granting Tyra's claim for disability insurance benefits. The ALJ determined that claimant's residual functional capacity was compromised by his symptomatology. The Appeals Council, however, noting that a discrepancy existed in the record concerning claimant's work history, reopened the hearing decision on June 25, 1987. The Appeals Council vacated the ALJ's decision and remanded the action for further proceedings. *See* 20 C.F.R. §§ 404.977, 404.988, 404.989 (1988).

A new hearing was conducted before Administrative Law Judge Dennis Runyan on August 26, 1987. On September 26, 1987, Judge Runyan issued his decision denying benefits to the claimant. The Appeals Council denied claimant's request for a review on February 18, 1988, making the ALJ's decision the final decision of the Secretary. Claimant thereafter appealed to the district court. On December 20, 1988, the United States Magistrate issued a Report and Recommendation proposing that the Secretary's decision denying appellant's claims be upheld. Claimant filed objections to the magistrate's Report and Recommendation. On April 27, 1989, the district court issued its Order granting the Secretary's motion for summary judgment in accordance with the magistrate's Report and Recommendation. Claimant thereafter filed this timely appeal.

The following evidence was introduced at the August 26, 1987 hearing.

Claimant was born on August 2, 1937, and was 48 years old when he filed for disability insurance benefits on March 11, 1986. He has a ninth grade education and can read and write. Claimant operated garbage trucks, snow plows and salt spreaders for the city of Saginaw, Michigan, from 1967 to 1983. The job entailed walking and standing eight hours per day, bending, reaching, and lifting 25–50 pounds. Tyra has been employed on a part-time basis (20 hours per week) since 1984 as a light equipment operator. This job entails collecting garbage, cutting grass, painting, sweeping, and maintaining small tools. Claimant alleges disability since November 1, 1984, due to lower back pain.

The medical evidence indicates that claimant was treated for lower back and right side leg pain prior to his alleged onset date of disability. Dr. George Schanz performed an intradiscal chemonucleolysis of L4–5 and L5–S1 in June, 1983 because an electromyogram had shown moderate L–5 abnormalities. Dr. Schanz later reported that claimant showed post-surgical neurological improvement and anticipated Tyra's return to work in approximately 1 month.

Though Dr. Schanz noted that Tyra's "neurological picture improved as an outpatient in terms of strength in the right lower limb," the doctor recommended further surgery to relieve claimant's back pain. Tyra underwent a decompressive laminectomy, removal and discectomy of L5–S1. In June, 1984, Timothy Webber, D.O., examined the claimant and noted ligamentous instability. Dr. Webber performed prolotherapy injections of Tyra's spinal ligamentous region and sacral areas. In April, 1985, Dr. Schanz examined the claimant and found "irritable" straight leg raising but noted normal vital signs, normal musculoskeletal responses, and normal neurological responses.

K. Timm, a physical therapist, examined claimant in June, 1985, and noted normal dermatomes and deep tendon reflexes though he also found limited lumbar ranges of motion and slightly decreased muscle strength. Tyra was given a physical therapy plan consisting of postural correction exercises. In August, 1985, a CT scan indicated some stenosis with narrowing of L4–5 and L5–S1. Dr. William F. Chandler, a neurosurgeon, examined Tyra in November, 1985, and found paraspinal muscle spasm and a limited range of lumbar motion, but otherwise normal strength, reflex, and neurological responses. Straight leg raising was negative bilaterally.

In January, 1986, claimant complained of persistent sciatic pain. Dr. Schanz performed a left L4–5 spinal fusion and a decompression of the left L5–S1 area, though the doctor admitted that the objective pre-surgery examination indicated clinically and neurologically negative findings, no neurological dysfunction, no atrophy, no plantar or dorsal flexion weakness, and 70% of normal forward flexion. In March, 1986, Tyra complained of back and bilateral thigh pain to Dr. Schanz. The doctor, finding negative musculoskeletal and neurological findings, encouraged the claimant to continue his walking program. Dr. Schanz's medical records from 1983 to 1986, as well as Dr. Webber's medical records, consistently indicate that Tyra's

subjective complaints of pain were generally contradicted by normal neurological and physiological findings.

Tyra testified that he has trouble dressing, that he must lie down 2 hours per day, and that he can only sit for thirty minute intervals. Claimant, however, prepares a snack for himself, eats 2–3 meals per day, walks, exercises, watches television, and drives a car. Tyra also washes dishes, shops, does yard work, socializes with neighbors, and visits his relatives monthly.

Referring to claimant's initial disability award, Mr. Floyd P. Kloc, Chief Assistant Saginaw City Attorney, stated in a January 23, 1987 letter to the Secretary that Tyra's allegations of an inability to perform all but "make-shift" work were inaccurate. Mr. Kloc wrote:

Although it is true Mr. Tyra has definite work limitations at present, I suggest that his is a very inaccurate picture of Mr. Tyra's duties and his ability to perform them. First of all, all the duties he is assigned are within the job classification of a Light Equipment Operator, the position he has held since before his injuries. He has merely been assigned the lighter duty types of work within his job classification pursuant to his doctor's orders. This effort to accommodate him is not merely "make-shift" work. Enclosed is a copy of a self-explanatory communication to me from his supervisor on this issue, which has attached to it the various duties Mr. Tyra may perform, depending on department needs on any given day, during his present 4 hours per day, 5 days per week schedule.

Secondly, while the "Evaluation of the Evidence" portion of the award indicates that Mr. Tyra apparently testified that he did not work between May 1983 and January 1984, and October 1984 through July 1986, our records show that [this testimony] is not correct either. While he did lose much time during these periods as a result of the initial injury and subsequent surgeries and treatment, he did in fact work all of May and through June 19, 1983. He [similarly] worked from June 27, 1984 through March 17, 1985, and he has worked part time, on his 4 hours per day, 5 days per week schedule, from June 16, 1986 to the present with only a few lost work days.

Mr. Kloc's letter included a copy of a January 15, 1987 communication from Robert Obuchowski, Assistant Superintendent of Streets, Parks and Cemeteries. Obuchowski's communication confirmed that Tyra's work assignments were not merely "make-shift" work.

Daniel Rogalny, a vocational expert (VE), testified at the hearing that Tyra's past relevant work was heavy to very heavy and unskilled. Tyra's current work was light to medium and unskilled. Rogalny testified that if all of the claimant's subjective allegations of disabling symptomatology were true, Tyra would not be able to perform any work. However, based upon a series of hypotheticals posed by the ALJ concerning a claimant with Tyra's objective medical limitations of lumbar motion, back spasms, and straight leg raising irritation, claimant could still perform a limited range of sedentary, unskilled work including television monitor/security guard, information clerk, assembler and inspector. The VE testified that approximately 13,800 such positions providing a sit/stand option exist in the regional economy. The VE also testified that Tyra's current position could not be considered "make-shift" work because the work claimant performed was consistent with the duties of a light equipment operator.

On September 26, 1987, the second ALJ found Tyra not disabled within the meaning of the Social Security Act. The ALJ determined that claimant suffered from "severe impairments of lumbosacral disc disease, status post multiple back surgeries, and persistent left lower extremity sciatica," but that he did not have an impairment, or combination of impairments, listed in, or medically equal to one listed in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1988). The ALJ held that Tyra's testimony was not credible to the extent that it was inconsistent with such findings.

The ALJ further held that during the period of June 27, 1984 to March 17, 1985, and since June 16, 1986, the claimant has been engaging in substantial gainful employment. *See* 20 C.F.R. §§ 404.1572, 404.-1573, 404.1574 (1989). Although the ALJ determined that between March 17, 1985 and June 15, 1986 the claimant was unable to perform his past relevant work as a rubbish collector or light equipment operator, the ALJ held that Tyra's residual functional capacity for the full range of sedentary work was reduced only by the claimant's need for a sit/stand option with no significant bending or stooping.

Claimant argues that the Secretary's finding that he had the residual functional capacity to perform limited unskilled sedentary work after November 1, 1984 is not supported by substantial evidence. Specifically, claimant argues that his painful back condition resulted in a marked limitation of functional capacity.

## II.

### A.

■ This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. § 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole." *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980), and we " 'must take into account whatever in the record fairly detracts from its weight.' " *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir.1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456

(1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

■ The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d). If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied. 20 C.F.R. §§ 404.-1520(b), 416.920(b). If the claimant is not found to have an impairment which significantly limits his or her ability to work (a severe impairment), then he or she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.-920(c).

If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments. 20 C.F.R. §§ 404.-1520(d), 416.920(d). *See* 20 C.F.R. §§ 404.-1525(a), 416.925(a). If so, benefits are owing without further inquiry. In the instant case, the ALJ found that Tyra did not suffer from one of the listed impairments. In such a case, assuming the individual had previously worked, the Secretary must next decide whether the claimant can return to the job he or she previously held. 20 C.F.R. §§ 404.1520(e), 416.920(e). By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," the claimant establishes a prima facie case of disability. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir.1978). In the instant case the ALJ found that Tyra was not capable of returning to his particular occupation.

■ At this step in the analysis it becomes the Secretary's burden to establish the claimant's ability to work. *Allen*, 613 F.2d at 145. The Secretary must prove that, taking into consideration present job qualifications such as age, experience, education, and physical capacity, and the existence of jobs to match those qualifications, the claimant retains the capacity to per-

form a different kind of job. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1953, 76 L.Ed.2d 66 (1983). The Secretary's burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. If the characteristics of the claimant do not identically match the description in the grid, however, then the grid is used only as a framework or a guide to the disability determination. *Kirk,* 667 F.2d at 528. In the instant case the ALJ determined that claimant's characteristics resembled, but did not identically match, the characteristics found in the residual functional capacity grid at Rule 201.18 suggesting no disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2.

### B.

■ The regulations preclude a finding of disability, regardless of impairment, if a claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b) (1989). Furthermore, any work done during a period of claimed disability may show that a claimant can engage in substantial gainful activity. 20 C.F.R. §§ 404.1571, 404.1520 (1989); *Mullis v. Bowen,* 861 F.2d 991, 993 (6th Cir.1988). Factors to be considered include amount of pay and the length of time worked. 20 C.F.R. §§ 404.1573, 404.-1574 (1989). The regulations create a presumption that an employee who earns more than $300 per month is engaging in substantial gainful activity. 20 C.F.R. § 404.1574(b)(2)(vi) (1989).

The record from the hearing before the first ALJ supports the Secretary's assertion that the claimant earns more than $300 per month from the city of Saginaw. The first ALJ, however, failed to fully develop the record with regard to the conditions of claimant's employment in light of Floyd Kloc's letter to the Secretary regarding Tyra's description of his job duties. *See*

*Thompson v. Sullivan,* 878 F.2d 1108, 1110 (8th Cir.1989) (the substantial gainful employment presumption created by earning more than $300 per month does not relieve the ALJ of the duty to develop the record fully and fairly).

Kloc's letter to the Secretary prompted the Appeals Council to reopen claimant's action and vacate the first ALJ's findings pursuant to 20 C.F.R. §§ 404.987, 404.988, 404.989 (1989). 20 C.F.R. § 404.988 provides:

A determination, revised determination, decision, or revised decision may be reopened—

(a) Within 12 months of the date of the notice of the initial determination, for any reason;

(b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case....

Conceding that subsection (a) is inapplicable because 12 months lapsed prior to reopening the action, the Secretary relies upon subsection (b).[1]

"Good cause" for reopening is defined in 20 C.F.R. § 404.989:

(a) We will find that there is good cause to reopen a determination or decision if—

(1) New and material evidence is furnished....

The Secretary argues that Kloc's letter constituted "new and material evidence" thereby justifying reopening the action and vacating the ALJ's findings. We agree with the Secretary. Floyd Kloc's letter to the Secretary offered "new and material" evidence regarding claimant's current work status and residual functional capacity. The Appeals Council therefore properly reopened Tyra's claim, vacated the ALJ's decision, and remanded the action to an ALJ "for further proceedings, including a new decision." Appellant's contention that the Appeals Council improperly vacated the ALJ's decision and remanded the action is

---

**1.** The one and four-year periods during which the Appeals Council may reopen a case commence on the date the claimant is sent notice of the initial determination on his application for benefits. The regulations also permit the Appeals Council to initiate review of an ALJ's decision on its own motion within sixty days after the date of the hearing decision (20 C.F.R. § 404.969 (1989)). *Cieutat v. Bowen,* 824 F.2d 348, 354–57 (5th Cir.1987).

without merit. *See* 20 C.F.R. §§ 404.987, 404.988, 404.989 (1989); *Cieutat v. Bowen,* 824 F.2d 348 (5th Cir.1987). Similarly, Tyra's argument that he did not receive "proper notice" of the Appeals Council's decision to vacate the prior determination is contradicted by the record and is therefore without merit.

■ Claimant next contends that the ALJ allowed inadmissible hearsay evidence to be introduced. The Social Security Act specifically provides that "[e]vidence may be received at any hearing before the Secretary even though inadmissible under rules of evidence applicable to court procedure." 42 U.S.C. § 405(b)(1) (1983). The Secretary's regulations reinforce the statutory policy that the "administrative law judge may receive evidence at the hearing even though the evidence would not be admissible in court under the rules of evidence used by the court." 20 C.F.R. § 404.950(c) (1989). Therefore, relevant evidence not admissible in court, including hearsay, is admissible at an administrative hearing.

■ Claimant next argues that the ALJ erroneously concluded that there was insufficient evidence to support a debilitating impairment beginning November 1, 1984. We reject this argument. Claimant contends that he cannot perform even a limited range of sedentary work. Sedentary work involves lifting and carrying small items including files, ledgers and tools weighing no more than ten pounds. A sedentary job entails much sitting with occasional standing and walking. 20 C.F.R. § 404.1567(a). The record contains substantial evidence to support the second ALJ's finding that the claimant can perform a limited range of sedentary work despite his physical impairments.

Though claimant's physicians consistently reported Tyra's subjective complaints of pain, he had no underlying neurological abnormalities, atrophy or proportionate loss of sensory and reflex reactions. Dr. Schanz reported that claimant could return to work following his surgeries, and Dr. Webber merely restricted Tyra to a ten pound lifting maximum. Furthermore, the ALJ noted that claimant's demeanor at the hearing did not substantiate his allegations of disability. Tyra was able to sit throughout the entire hearing (one hour and twenty minutes), thereby contradicting his testimony that he could only sit for thirty minutes before standing to alleviate his pain. The ALJ found that the objective medical evidence failed to confirm the severity of pain that the claimant alleged, and that Tyra's underlying condition could not reasonably be expected to produce disabling pain.

This court has previously held that subjective complaints of pain may support a claim for disability. *Duncan v. Secretary of Health & Human Servs.,* 801 F.2d 847, 852 (6th Cir.1986). However, subjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability. 20 C.F.R. § 404.1529 (1989). To support a claim for disability there must be objective medical evidence in the record of an underlying medical condition. *Duncan,* 801 F.2d at 853. If this requirement is met, the court must also determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition, or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce disabling pain. *Id.* In applying this standard the reviewing court should show deference to the decision of the administrative law judge in assessing credibility. *Gooch v. Secretary of Health & Human Servs.,* 833 F.2d 589, 592 (6th Cir.1987), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1050, 98 L.Ed.2d 1012 (1988).

Claimant testified that he walks five miles per day, exercises, drives a car, watches television, washes dishes, shops, performs yard work, socializes with neighbors, and visits his relatives. Tyra's complaints of disabling pain were properly rejected because the medical and testimonial evidence failed to confirm the severity of the pain. Though Tyra alleged fully disabling and debilitating symptomatology, the ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict.

■ Tyra's claim of disability hinges largely upon his contention that the work he performs is "make-shift," and not substantial gainful employment. The Secretary has promulgated regulations concerning work done under special conditions or circumstances to determine if, in fact, that work is substantial gainful activity. *See* 20 C.F.R. §§ 404.1573, 404.1574(a)(3) (1989). Generally, an individual earning over $300 per month is deemed to be engaging in substantial gainful activity. 20 C.F.R. § 404.1574(b)(2)(vi) (1989). Claimant surpassed this earnings figure.

Furthermore, in addition to earnings, the Secretary compared claimant's job duties to those of unimpaired people in claimant's community employed in similar occupations. *See* 20 C.F.R. § 404.1574(b)(6)(i) (1989). A claimant's work is considered substantial gainful employment if it is clearly worth $300 per month even if the work is significantly less than that performed by an unimpaired person. 20 C.F.R. § 404.1574(b)(6)(ii) (1988). Tyra's supervisor indicated that claimant's assigned duties were "consistent and important to the overall effectiveness of our daily operations," adding that "it was not our intent to provide 'make do' work but to better address those needs that we had." Furthermore, the vocational expert testified that he did not consider claimant's job to be "make-shift" work. The ALJ therefore concluded, based on Tyra's earnings records and job description, that claimant's services constitute substantial gainful employment.

The ALJ's determination that the claimant engaged in substantial gainful employment between June 27, 1984 and March 17, 1985, and since June 16, 1986, is supported by substantial evidence. Furthermore, the ALJ's determination that the claimant retained the ability to perform a limited range of sedentary work is also supported by substantial evidence. The judgment of the district court is therefore AFFIRMED.