960 F.2d 149
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Beverly A. ALFREY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 91-3751.
 United States Court of Appeals, Sixth Circuit.
 April 14, 1992.
 
 Before Ralph B. GUY, Jr. and RYAN, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 The plaintiff appeals from a decision of the district court affirming the Secretary's denial of her claim to disability and supplemental security income benefits. Finding that the Secretary's decision is supported by substantial evidence, we affirm.
 
 I.
 
 2
 The plaintiff, Beverly Alfrey, was born in 1954 and has a ninth-grade education. She worked as a waitress, bartender, and cook until 1981. From 1981 to 1987, Alfrey worked as a nurse's aide and as director of activities at a nursing home. She has not been employed since she underwent a hysterectomy in July 1987.
 
 
 3
 In September 1987, Alfrey underwent the first of several medical examinations for chronic leg and back pain. These examinations revealed that Alfrey has mild impairments in her ability to lift, twist, bend, and stoop.
 
 
 4
 Alfrey filed a set of applications for disability and supplemental security income benefits in June 1988. In these applications, Alfrey claimed to be disabled both by physical limitations and by her nerves.
 
 
 5
 Alfrey's mental health problems apparently first surfaced during her teenage years when she was seen by a social worker at a local mental health services center. Alfrey returned to the center in 1982 after taking an overdose of muscle relaxant following a fight with her first husband. The social worker who treated Alfrey concluded that marital strife had caused Alfrey's anxiety and that she had an intact memory, was well-oriented, and possessed average intelligence.
 
 
 6
 Six years later, Alfrey returned to the mental health center and complained of difficulty coping with her brother's 1984 suicide. In July 1988, Dr. Edwin Roberts, Alfrey's treating physician, examined her and prescribed psychotropic medicine for her nerves. Dr. Roberts concluded that Alfrey's activities were unrestricted and that she could work. One month later, Dr. A.L. Chadha examined Alfrey and concluded that Alfrey had a "fair" ability to relate to others and care for her personal needs and that she "has been nervous & gets easily upset." (App. 240).
 
 
 7
 After the Social Security Administration denied Alfrey's applications in October 1988, Alfrey requested review by an administrative law judge (ALJ). Two weeks before the hearing, Alfrey was examined by a clinical psychologist, Dr. Jerry Flexman. Dr. Flexman found that Alfrey was alert, fully oriented, and had fair abstract reasoning abilities. He found that Alfrey had a full scale IQ of 75 and a borderline score on a memory test, consistent with an ability to remember simple one- or two-step job instructions. Dr. Flexman also noted that Alfrey handles her own finances, drives an automobile, shops, plays cards, occasionally dines out, visits relatives, follows the plots of television soap operas, and reads daily.
 
 
 8
 Dr. Flexman diagnosed a somatoform pain disorder, a passive aggressive personality disorder, and borderline intellectual functioning. He concluded that Alfrey's ability to get along with co-workers, supervisors, and the public was poor. He also stated that the stresses of an ordinary work environment would increase Alfrey's somatization.
 
 
 9
 In the two weeks surrounding the hearing before the ALJ, Alfrey went to the emergency room of a local hospital three times. The first time, she reported that she was upset over her brother's suicide and had been drinking heavily. Alfrey was diagnosed as having acute situational reaction and released. The same diagnosis was made when she returned two days later. Eleven days later, she arrived at the emergency room in a distraught state and announced that she had taken alcohol and eight ibuprofen tablets. Alfrey denied that she had attempted suicide, and she was released after a physician determined that she was not suicidal.
 
 
 10
 In May 1989, Letitia van Benten, Ph.D., a clinical psychologist, examined Alfrey at the request of the Social Security Administration. Dr. van Benten found Alfrey to be depressed, but alert and responsive. Dr. van Benten measured Alfrey's IQ to be 77, found that she had fairly good ability to perform simple math, and opined that Alfrey's memory and abstract thinking ability were good. Dr. van Benten diagnosed Alfrey as having borderline intellectual functioning and a schizoid personality disorder. Dr. van Benten concluded that Alfrey's ability to tolerate the stresses associated with daily work and her ability to work with others were moderately to severely impaired, and that her abilities to concentrate, understand instructions, and perform simple tasks were all moderately impaired.
 
 
 11
 At the hearing, the ALJ heard testimony from Alfrey and from Charlotta Ewers, a vocational expert. Ewers testified that Alfrey's physical disabilities would prevent her from performing all of the jobs that she had held before. However, she estimated that there were within a 50-mile radius of Dayton, Ohio, at least 15,000 "light unskilled" positions and at least 20,000 "sedentary unskilled" positions that a person with Alfrey's physical limitations could perform. When asked how many of these jobs would be eliminated by an inability to deal with the public, Ewers estimated that 7,000 of the sedentary positions and 5,000 of the light positions require public contact. She stated that all of the remaining positions involved simple, repetitive tasks that could be performed without close supervision.
 
 
 12
 In July 1989, the ALJ denied Alfrey's applications. The ALJ agreed that Alfrey had some physical impairment and psychological problems that would prevent her from performing in the types of jobs that she had held in the past. He concluded, however, that Alfrey was not disabled as there were a substantial number of jobs that Alfrey could perform in the regional and national economies.
 
 
 13
 The appeals council denied Alfrey's request for review in May 1990, allowing the ALJ's decision to stand as the Secretary's final decision. Alfrey then filed an action for review in the district court. After the district court upheld the Secretary's decision, Alfrey filed this appeal.
 
 II.
 
 14
 A claimant is not disabled within the meaning of the Social Security Act unless she is so severely impaired that she can neither perform her previous work nor, considering her age, education, and work experience, engage in any other substantial gainful activity. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir.1990). The claimant bears the burden of proving that she is disabled. Tyra v. Secretary of Health and Human Servs., 896 F.2d 1024, 1028 (6th Cir.1990).
 
 
 15
 On appeal, Alfrey does not contest the ALJ's finding that she retains the physical capacity to perform light work. She also does not dispute the ALJ's finding that there are a significant number of jobs in the regional and national economies that require only light, repetitive work without much contact with the public or supervisors. She argues, however, that the ALJ erred in finding that her mental condition would allow her to perform such work.
 
 
 16
 Our review is limited to determining whether the ALJ's finding was supported by substantial evidence in the record. Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir.1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted). If substantial evidence supports the ALJ's finding, we may not reverse the finding even if there is also substantial evidence that would support the opposite finding. See Mullen v. Bowen, 800 F.2d 535, 546 (6th Cir.1986).
 
 
 17
 The Secretary points to several pieces of evidence that support the ALJ's finding. First, Dr. Roberts, Alfrey's treating physician, concluded in July 1988 that Alfrey was able to work. He also opined that she had normal abilities to relate to others, care for herself, and manage her finances. While Dr. Roberts is apparently not a mental health specialist, his observations are entitled to some weight, particularly since he had treated and observed Alfrey for 11 years. Cf. Landsaw v. Secretary of Health and Human Servs., 803 F.2d 211, 213 (6th Cir.1986).
 
 
 18
 Second, the Secretary points to the sporadic nature of Alfrey's mental health treatment history. The Secretary suggests that Alfrey's infrequent need for treatment shows that she can function in most situations.
 
 
 19
 Third, the Secretary argues that the ALJ properly relied on evidence establishing Alfrey's ability to perform routine daily functions. Alfrey's testimony and the reports from the psychologists who examined her indicate that on a daily basis she cooks, cleans, reads books for more than an hour at a time, watches television, and drives. The evidence also indicates that Alfrey manages the finances of herself and her husband, shops, visits family members, plays cards with her parents, and dines out. These activities suggest that Alfrey is capable of performing simple, repetitive work that does not require close supervision or contact with the public.
 
 
 20
 Fourth, the Secretary argues that the reports of Drs. Flexman and van Benten are consistent with the ALJ's finding. Although Dr. Flexman concluded that Alfrey could not tolerate "ordinary workplace stress" and Dr. van Benten found that Alfrey was not able to tolerate "much stress," the Secretary points out that neither psychologist reported that Alfrey could not tolerate a low-stress work environment. Both psychologists agreed that Alfrey felt the most stress in contact with others and would have difficulty in getting along with co-workers. Dr. van Benten found that Alfrey had poor ability to no ability to behave in an emotionally stable manner or demonstrate reliability.
 
 
 21
 Both Drs. Flexman and van Benten found that Alfrey could understand and remember simple instructions. Dr. Flexman concluded, however, that her ability to sustain work was poor, while Dr. van Benten found that her ability to sustain work performance was moderately impaired. Dr. van Benten explained that Alfrey could maintain concentration for short periods of time, but her performance would be variable.
 
 
 22
 We conclude that substantial evidence supports the ALJ's determination that Alfrey retains the mental capacity to perform light, repetitive work so long as she has neither direct contact with the public nor close supervision. From the reports of Drs. Roberts, Flexman, and van Benten, a reasonable mind might conclude that Alfrey could perform in a low-stress environment so long as she had little contact with others. Alfrey's ability to follow television soap operas, manage household finances, and read for extended periods of time is evidence that she retains the capacity to concentrate and sustain performance.
 
 
 23
 Having concluded that Alfrey was able to perform certain types of low-stress work, the ALJ properly relied on the vocational expert's estimate of the number of such jobs available in the regional economy to conclude that Alfrey was not disabled within the meaning of the Social Security Act. Therefore, the district court did not err in affirming that determination.
 
 
 24
 AFFIRMED.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation