985 F.2d 559
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Thomas E. DRUMRIGHT, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 92-5321.
 United States Court of Appeals, Sixth Circuit.
 Feb. 1, 1993.
 
 Before DAVID A. NELSON and BOGGS, Circuit Judges, and ROSENN, Senior Circuit Judge.[1]
 PER CURIAM.
 
 
 1
 This is a social security disability case in which the claimant appeals a judgment in favor of the Secretary. Because we are not persuaded that the Secretary erred in finding that the claimant's infirmities lay outside the "Listing of Impairments" in the governing regulations, and because we conclude that the Secretary's decision to deny the claim was supported by substantial evidence, we shall affirm the judgment.
 
 
 2
 * A. The Procedural History.
 
 
 3
 The claimant, Thomas E. Drumright, filed an application for benefits that was denied after a hearing before an administrative law judge. The ALJ found that Mr. Drumright retained the functional capacity to perform sedentary work, and thus was not disabled, even though he had severe impairments that included a partially paralyzed left leg resulting from childhood polio.
 
 
 4
 The Appeals Council vacated the decision of the ALJ and remanded the matter. After another hearing the ALJ again found that Mr. Drumright was not disabled. This determination became the final decision of the Secretary when the Appeals Council denied a second request for review.
 
 
 5
 Mr. Drumright then sought judicial review in the United States District Court for the Middle District of Tennessee. A magistrate judge (Kent Sandidge, III) submitted a carefully reasoned report in which he recommended the denial of a motion for summary judgment filed by the claimant and the granting of a motion for summary judgment filed by the Secretary. The district court (Morton, J.) approved the report and recommendation without commenting on objections that had been filed by Mr. Drumright, and this appeal followed.
 
 
 6
 B. The Factual Background.
 
 
 7
 Mr. Drumright was born in 1942. He contracted poliomyelitis at about the age of nine, and his left leg became partially paralyzed. He has also experienced an overuse syndrome in his right knee, a loss of control over his left ankle (necessitating the insertion of three pins to stiffen the joint), and lower back problems that led to disc surgery. Despite his infirmities Mr. Drumright, who is a high school graduate, was employed for 17 years by Nestle Foods. There he worked as a sales representative, unit sales manager, and distributor manager.
 
 
 8
 In September of 1988 Nestle sent Mr. Drumright a letter telling him to apply for Social Security disability benefits because "[y]our current physical condition, as supported by three separate physicians reports, prohibits you from doing your job. The findings of the three physicians (orthopedists Lipscomb, Gaw and McInnis) will be summarized shortly. First, however, we turn to Dr. Interlandi, an internist who was Mr. Drumwright's primary care physician from 1984 to 1989.
 
 
 9
 The treatment notes of Dr. Interlandi for visits prior to September 1988, when Mr. Drumright was still working, reflect hypertension and complaints of left shoulder pain, sinusitis and work-related stress, headaches, and mild depression. Mr. Drumright had a complete physical examination in March of 1988; other than an ear infection, the findings were unremarkable. A brief physical examination in May of 1989, not long before the first ALJ hearing, was also unremarkable; although Mr. Drumright complained of back pain, the examination produced no significant findings.
 
 
 10
 In a letter sent to Mr. Drumright's attorney in July of 1989, Dr. Interlandi stated that Mr. Drumright had residuals of childhood polio, hypertension, gout, kidney stones, mild arthritis of the knees, and a history of rotator cuff injury to the left shoulder; most of these conditions were controlled by medication. The patient's major disability was said to be his lack of strength and coordination in the left leg, which had been damaged by polio. On a medical assessment form completed on July 17, 1989, Dr. Interlandi estimated that Mr. Drumright could lift up to 10 pounds frequently and 15 pounds occasionally, could stand and walk two hours in an eight-hour work day, and could sit without limitation.
 
 
 11
 Dr. Lipscomb, the first orthopedist, had treated Mr. Drumright between November of 1986 and February of 1987 and had examined him on July 6, 1988, about two months before Mr. Drumright lost his job. Dr. Lipscomb concluded that Mr. Drumright should not engage in activities involving prolonged standing, stooping or bending and recommended avoidance of lifting above shoulder level. Dr. Lipscomb re-examined Mr. Drumright in May of 1989, and his findings remained the same.
 
 
 12
 On medical assessment forms completed in July of 1989, Dr. Lipscomb stated that Mr. Drumright could lift 15 pounds 20% to 60% of the time, or 8 to 10 pounds for periods of up to four hours, and could sit without limitation but should avoid all walking and standing. He further stated that Mr. Drumright had no psychological impairment and was not disabled from all occupations despite the fact that he was unable to do any standing or walking.
 
 
 13
 The second orthopedist, Dr. Gaw, examined Mr. Drumright about three months before he lost his job at Nestle. Dr. Gaw's notes include observations on Mr. Drumright's history of polio, left foot weakness, the pins in the left ankle, and early degenerative changes in the right knee joint. He recommended sedentary work. On a later medical assessment form filled out in January of 1989, Dr. Gaw estimated that Mr. Drumright could lift 10 pounds and could stand and walk two hours and sit six hours in an eight-hour work day. A form filled out in June of 1989, just before the first hearing before the ALJ, gave a similar assessment and stated that Mr. Drumright was not disabled from all occupations.
 
 
 14
 A report of an evaluation conducted in August of 1989 by Dr. McInnis, the third orthopedist, referred to marked atrophy of the left calf and an absence of a left ankle reflex but a full range of motion in the left hip, knee and ankle. According to Dr. McInnis' assessment Mr. Drumright could walk a total of two or three hours a day, with one hour of walking at a time. Advising minimal climbing, Dr. McInnis recommended a sedentary job. On a medical assessment form that he filled out in January of 1989, Dr. McInnis stated that Mr. Drumright could sit six hours in an eight-hour work day.
 
 
 15
 In October of 1989, subsequent to the first ALJ decision, Mr. Drumright underwent a decompressive laminectomy. Dr. Anderson, the orthopedic surgeon who performed the operation, stated three months later that Mr. Drumright could sit without limitation and lift 15 pounds 20% to 60% of the time, but could not stand at all. Dr. Anderson did not know of any significant psychological problems. He expressed the opinion, however, that Mr. Drumright was unable to work in any occupation.
 
 
 16
 In a form completed on September 1, 1990, shortly after the second ALJ decision, Dr. Anderson--who had seen Mr. Drumright twice a year between May of 1986 and August of 1990--stated that Mr. Drumright was completely disabled and was incapable of even minimal sedentary activity. Three months later Dr. Anderson completed a medical assessment form stating Mr. Drumright would "NEVER" be able to work again. The Appeals Council reviewed these two post-hearing submissions by Dr. Anderson but discounted them.
 
 
 17
 Dr. Gavigan, an examining orthopedic surgeon, evaluated Mr. Drumright in the period between the two ALJ hearings and concluded that he was unable to perform his former job as a sales representative. Dr. Gavigan estimated that he could lift up to 30 pounds occasionally (i.e. up to 20% of the time) and could sit without limitation, but said that the patient's capacity for standing and walking was extremely limited. The doctor was unaware of any significant psychological impairment.
 
 
 18
 Mr. Wilson, a clinical psychologist, reported that he had seen Mr. Drumright on one occasion but that Drumright had failed to return for a second appointment.
 
 
 19
 Mr. Drumright testified at the administrative hearings that he occasionally cooks out, drives, and goes to the bank and car wash. He reported that he had been to a psychologist two times and had taken a stress management course. He took a drug called Limbitrol (one tablet per day) for the control of anxiety, tension and depression.
 
 
 20
 A vocational expert testified that Mr. Drumright's past relevant work was in the skilled category and that his skills were transferable to other jobs. Responding to a hypothetical question involving functional capabilities and limitations like those Mr. Drumright appeared to have, the vocational expert testified that there were some 3,300 sales jobs in Tennessee where Mr. Drumright's transferrable skills could be utilized and where he could alternately sit and stand and would not have to lift over 10 pounds. Unskilled jobs such as telemarketer, cashier, machine tender, or order clerk would also accommodate the identified limitations. The witness further testified that depression that was somewhat controlled via mild medication would not preclude the identified jobs.
 
 
 21
 The ALJ found that Mr. Drumright had the residual functional capacity to perform sedentary work that allowed him to alternately sit and stand. Considering the lack of mental health treatment, Mr. Drumright's mild medication level, and the affirmative statements by examining physicians that he had no significant psychological impairment, the ALJ found that Mr. Drumright did not have a significant mental impairment. A Psychiatric Review Technique Form memorialized the ALJ's evaluation of Mr. Drumright's mental condition under section 12.04 (affective disorders) of the Listing of Impairments set forth at 20 C.F.R. Part 404, Subpt P. App. 1. Noting the general agreement by the physicians that Mr. Drumright could lift 10 pounds and sit without limitation, the observations that he could work at some occupation other than his former job, and the testimony of the vocational expert, the ALJ found that Mr. Drumright had the residual function capacity to perform other jobs that existed in significant numbers in the national economy and that he was thus not disabled.
 
 II
 
 22
 Judicial review of the Secretary's disability decisions is limited to determining whether the findings were supported by substantial evidence and whether the proper standards were followed in adjudicating the claim at issue. 42 U.S.C. § 405(g); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir.1990). Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Walker v. Secretary of HHS, 884 F.2d 241, 244 (6th Cir.1989). When substantial evidence supports a decision by the Secretary, the decision must be affirmed even if substantial evidence might also support the plaintiff's claim. Smith v. Secretary of HHS, 893 F.2d 106, 108 (6th Cir.1989).
 
 
 23
 In the case at bar Mr. Drumright contends that his combination of impairments satisfied the requirements of the Listing of Impairments found at 20 C.F.R. Part 404, Subpt. P, App. 1. He also complains of the failure of the district court to present an analysis of his objections to the report and recommendation of the magistrate judge.
 
 
 24
 A claimant whose medical findings meet or equal the criteria of an entry in the Listing of Impairments is presumptively disabled without regard to age, education, and vocational factors. 20 C.F.R. §§ 404.1520(d), 404.1525(a), 404.1526. Mr. Drumright asserts that he met or equalled the criteria of Listing 11.11C, the entry covering anterior poliomyelitis.
 
 
 25
 To meet Listing 11.11C, a claimant must show a "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station...." § 11.04B (emphasis added). Although Mr. Drumright's left leg impairment doubtless qualifies, the only potential candidate for a second qualifying extremity is the left arm, where mobility and strength are limited by muscle and connective tissue damage from the torn rotator cuff. We are not certain that Listing 11.11C covers impairments resulting from non-neurological conditions, but we need not resolve that question because we do not believe that Mr. Drumright has made the requisite showing (see § 11.04B) of "[s]ignificant and persistent disorganization of motor function in the second extremity." The numerous independent assessments by his physicians that Mr. Drumright could lift 10 to 15 pounds, together with the lack of any detailed analysis of deficiencies in the left arm, support an inference that the shoulder limitation would not sustain a finding of presumptive disability under the Listings.
 
 
 26
 Mr. Drumright argues that inadequate weight has been given to statements by Drs. Lipscomb and Anderson, both of whom were treating doctors, that he was unable to do any walking or standing at all and that he was completely disabled. He stresses, in this connection, that Dr. Anderson's assessment is the most recent one. This court has consistently held, however, that the Secretary is not invariably bound by treating physicians' opinions, such opinions being entitled to great weight only if they are supported by sufficient clinical findings and are consistent with the evidence as a whole. See Young v. Secretary of HHS, 925 F.2d 146, 151 (6th Cir.1990); Crouch v. Secretary of HHS, 909 F.2d 852, 856 (6th Cir.1990); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir.1988); Miller v. Secretary of HHS, 843 F.2d 221, 224 (6th Cir.1988).
 
 
 27
 Dr. Lipscomb, it will be recalled, initially ruled out only prolonged standing. His later prohibition of all walking and standing came shortly after an examination in which his clinical findings were unchanged. In the later assessment, moreover, Dr. Lipscomb concluded that Mr. Drumwright was not disabled from all occupations. And Mr. Drumrights' own description of his activities negates a conclusion that he can do absolutely no walking or standing.
 
 
 28
 Dr. Anderson's statement that Mr. Drumright was completely disabled was inconsistent with the assessments of other physicians and was unsupported by any treatment notes or clinical findings. Under the regulations, the responsibility for assessing and determining residual functional capacity rests with the ALJ and the Appeals Council. 20 C.F.R. § 404.1546. In carrying out that responsibility they must resolve conflicts in the evidence. See Hall v. Bowen, 837 F.2d 272, 276 (6th Cir.1988); Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984). If the final decision of the Secretary is supported by substantial evidence, it must stand even if the reviewing court would have resolved the factual issues differently. Tyra v. Secretary of HHS, 896 F.2d 1024, 1028 (6th Cir.1990).
 
 
 29
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The Honorable Max Rosenn, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation