36 F.3d 1097
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles PERSELL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-1759.
 United States Court of Appeals, Sixth Circuit.
 Sept. 21, 1994.
 
 Before: SUHRHEINRICH, BATCHELDER, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Charles Persell appeals from the district court's denial of his application for Social Security disability insurance benefits. The district court granted summary judgment affirming the determination of the Secretary that Persell was not so disabled as to preclude substantial gainful activity. Accordingly, Persell was denied disability insurance benefits. Because the record contains substantial evidence to support the findings of the district court and the administrative law judge, we affirm.
 
 I.
 
 2
 Persell applied for disability insurance benefits on August 22, 1989, alleging that he became disabled on October 29, 1977, when a previously performed hip replacement became dislocated. In addition to his hip problems, Persell allegedly suffered from hypertension, prior heart attacks, migraine headaches, arthritis, ulcers, and pancreatitis. The Secretary denied his application initially and upon reconsideration. The administrative law judge denied Persell's claim for benefits, finding that Persell was not disabled through March 31, 1984, when his insured status expired. The Appeals Council denied Persell's request for review. The administrative law judge's decision thus became the final decision of the Secretary.
 
 
 3
 Persell filed for judicial review in the district court, pursuant to the provisions of 42 U.S.C. Sec. 405(g). On June 17, 1992, the magistrate judge recommended that the district court grant Persell's motion for summary judgment, and reverse the Secretary's denial of benefits. The Secretary objected and the district court rejected the magistrate's recommendation, instead granting summary judgment to the Secretary. This timely appeal followed.
 
 II.
 
 4
 Persell was 47 years old on March 31, 1984, the date he was last insured for disability insurance benefits. He has a twelfth grade education. Until 1977, Persell worked as a sweeper at General Motors. After his insured status expired, he worked full-time from January 1985 through July 1987 as a watchman in a bar.
 
 
 5
 Persell dislocated his hip in an automobile accident in 1961. The dislocation was treated with surgery. Surgery was performed again a year later when he was found to have aseptic necrosis of the hip. The hip became dislocated again in 1977, and a left hip replacement was performed at that time. Post-operative x-rays showed the hip to be satisfactorily in place. A few years later, in January 1980, x-rays showed that the replacement was well-seated and stable. In March 1984, the month Persell's insured status expired, hip x-rays showed placement of the left hip prosthesis and degenerative changes in the right hip.
 
 
 6
 Persell testified that he last worked in 1977 and that his condition has deteriorated since that time. While he remained able to perform a variety of household tasks and to attend movies and local sporting events, Persell testified, he was unable to walk, to stand, or to remain sedentary for any prolonged period. He further complained of numbness in his upper extremities, occasional migraines, pancreatitis, hypertension, and two heart attacks since 1980. He admitted a history of alcohol abuse, but he claimed that his alcohol use had not interfered with his ability to work and that he stopped drinking in 1990.
 
 
 7
 In December 1978, Persell was examined regarding complaints of pain from his neck through his shoulders. At that time, Persell had a limp on the left side, and decreased but normal range of motion in his cervical and lumbar spine. EMG studies showed nerve-root irritation at C6-7 on the left. X-rays showed incongruities between the placement of the left leg in the hip and that of the right leg in the hip. The examining physician diagnosed chronic left hip disease and nerve-root irritation of C6-7 consistent with compressive neuropathy, and recommended conservative treatment.
 
 
 8
 Persell's treating physician reported on March 2, 1979, that Persell had pain and difficulty in working and suffered from subluxation of his hip prosthesis, with cystic degenerative osteoarthritic changes in his left hip. He opined that Persell could not walk or stand for prolonged periods, and thus could not hold a full-time job that required continued weight-bearing on the left hip. This opinion did not, however, preclude the possibility of sedentary work or part-time work.
 
 
 9
 Persell was examined in January 1980 by an orthopedic surgeon. At that time, Persell demonstrated elevated blood pressure, and he complained of pain in the left hip, particularly after prolonged periods of standing. The physician noted some restriction in Persell's use of his left leg, but found the hip prosthesis to be well-seated and stable. The remainder of the examination was essentially normal.
 
 
 10
 Persell sought treatment for migraine headaches at the University of Michigan Hospital in May 1980. The headaches were alleviated by oral medications. X-rays taken at that time showed possible abnormalities in the left hip area.
 
 
 11
 Further medical records relate to the period after Persell's last date insured. On February 27, 1986, Persell underwent revision of the femoral component of his left hip replacement, in which extensive bone dissection was required. A new femoral component was inserted with a bone graft. On June 5, 1990, Persell was admitted voluntarily to an intensive outpatient alcohol abuse treatment program.
 
 
 12
 In November 1990, Persell's treating physician reported that the 1986 reconstruction had deteriorated, to the extent that the head of the humerus had eroded through the plate. In September 1991, the treating physician reported regarding Persell's condition from 1977 through 1984. He opined that Persell had become "markedly handicapped because of his severe condition which has progressively deteriorated", noting Persell's history of interrelated back pain, migraines, and hypertension. He wrote that Persell was unable to stand more than an hour during the course of the day, and unable to sit for even up to six hours per day. He concluded that Persell could not work with moving machinery due to his various medications, but expressed no opinion as to Persell's disability or lack thereof. Nevertheless, as of November 9, 1990, the treating physician found Persell to be incapable of sedentary work due to severe hip dysplasia and degenerative arthritis of the spine.
 
 
 13
 A vocational expert testified that, given Persell's age, education, work experience, and physical limitations, Persell would be able to perform entry level, unskilled, sedentary work. Her opinion assumed that Persell possessed the residual functional capacity to perform the physical exertional and non-exertional requirements of work, except for prolonged sitting or standing and lifting more than ten pounds. As of Persell's last insured date, 10,000 such jobs existed in southeast Michigan. If the lifting capacity were reduced to five pounds, the number of available jobs would decrease by 30 percent.
 
 
 14
 The administrative law judge found that as of March 31, 1984, Persell had severe post left hip arthroplasty, migraine headaches, and lower back pain, but that he did not have an impairment that was listed in or medically equal to one listed in 20 C.F.R. Sec. 404, subpart P, appendix 1. The judge found Persell's testimony regarding his debilitating pain during the insured period to be not entirely credible, due to the paucity of objective medical evidence in the record relating to the insured period and to Persell's own testimony at the hearing.
 
 
 15
 The judge found that, although he no longer was able to perform his past work as a press operator or sweeper, Persell had the residual functional capacity to perform the physical exertional and non-exertional requirements of work, except for lifting more than ten pounds and prolonged standing or sitting. The administrative law judge concluded that Persell was not disabled at any time, through and including the date last insured and the date of his decision.
 
 III.
 
 16
 Judicial review of the Secretary's decision is limited to determining whether the Secretary applied the correct legal standards in reaching her decision and whether there is substantial evidence in the record to support her findings. 42 U.S.C. Sec. 405(g); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). In determining the existence of substantial evidence, this court must examine the administrative record as a whole. Kirk v. Secretary, HHS, 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983).
 
 A. Persell's Disability Status
 
 17
 To establish disability under the Social Security Act, a claimant must demonstrate that he meets or equals the listing requirements of 20 C.F.R. Sec. 404, subpart P, appendix 1. Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028 (6th Cir.1990). The claimant must demonstrate that the impairment is so severe that he is unable to do his previous work and, considering his age, education, and work experience, is also unable to engage in any other substantial gainful activity. 42 U.S.C. Sec. 1382c(a)(3)(B). A reviewing court must determine whether substantial evidence supports the Secretary's conclusion; whether substantial evidence would support the opposite conclusion is immaterial. Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984).
 
 
 18
 Persell argues that his condition meets or equals that listed at Sec. 1.03 of appendix 1. Substantial evidence supports a finding that Persell is not disabled. Examinations prior to Persell's date last insured indicated that the hip prosthesis was stable and well-placed. His migraine headaches were controlled through conservative medication. Persell engaged in a variety of daily activities, despite his assertions of disabling pain. Medical evidence demonstrated that all other functions were within the normal range. The findings of the Secretary, administrative law judge, and district court are amply supported by the evidence.
 
 B. Subsequent Medical Evaluations
 
 19
 Persell claims that the administrative law judge should have recontacted Dr. Steven Hadesman for a more detailed report or copies of additional existing medical information, pursuant to 20 C.F.R. Sec. 404.1512(e) (1992). However, he relies on an amendment to the regulations that did not take effect until August 1, 1991, over six months after the administrative law judge rendered his decision. Under the amended regulation, the agency will seek additional information or clarification only when the physician's report contains a conflict or ambiguity, is incomplete, or does not appear to be based on medically acceptable clinical and diagnostic techniques. Persell has shown no such ambiguity.
 
 C. Duncan Pain Analysis
 
 20
 Persell argues that the administrative law judge failed to assess properly his claim of disabling pain. The Secretary employs a two-pronged test to analyze complaints of disabling pain or other symptoms. Jones v. Secretary, HHS, 945 F.2d 1365, 1369 (6th Cir.1991); Duncan v. Secretary, HHS, 801 F.2d 847, 853 (6th Cir.1986). Under the first prong of the test, the administrative law judge determines whether there is objective medical evidence of an underlying condition. Id. If there is such evidence, the administrative law judge must continue the analysis and consider whether the objective evidence confirms the severity of the alleged pain or symptoms arising from the condition, or whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the degree of pain or symptoms alleged. Id.
 
 
 21
 The record is replete with evidence to support the findings below. Persell was able to walk five days after his 1977 surgery. He apparently did not require a cane until 1986, two years after his insured status expired. An EMG in 1978 did show some nerve-root irritation in the cervical spine, but x-rays of the area were normal, and a 1980 neurological exam revealed no neurological deficits in the upper extremities. Lumbar spine x-rays indicated only minimal degenerative changes. The administrative law judge's findings regarding Persell's residual functional capacity comport with statements by treating and examining physicians who agreed that Persell was unable to perform work that required prolonged walking or standing. The administrative law judge's decision acknowledged these statements to the extent that his decision limited Persell to sedentary employment which does not require prolonged standing.
 
 
 22
 Persell's own testimony contradicts his assertions of disabling pain. Even in 1991, he could walk for half a block, stand for short periods, and sit for up to an hour. His varied daily activities, as well as his full-time job as a watchman in a bar from January 1985 through July 1987, support the administrative law judge's determination. In light of this evidence, it is clear that the district court and the administrative law judge did not err in denying Persell's Duncan claim.
 
 D. Substantial Gainful Activity
 
 23
 To be found disabled and entitled to benefits, Persell must show that he was disabled on or before his date last insured, and that his disability continued until within twelve months prior to the claimant's filing his application for disability benefits. 20 C.F.R. Sec. 404.320(b)(3). An individual who is working and engaging in substantial gainful activity will not be found "disabled" regardless of medical findings. 20 C.F.R. Sec. 404.1520(b) (1992). Any work done during a period of claimed disability may show that a claimant can engage in substantial gainful activity. 20 C.F.R. Sec. 404.1571. An individual is ordinarily found to have engaged in substantial gainful activity if he has earned more than $300.00 per month. 20 C.F.R. Sec. 404.1574(b)(2)(vi).
 
 
 24
 As a watchman, Persell earned $75.00 per week, from January 1985 through July 1987. Persell alleged that he was disabled from 1977 through and including the date of the hearing. Persell's earnings as a watchman would seem to signal an end to his period of disability, and he did not file his application for disability benefits until more than 12 months after his period of disability benefits ended. The district court correctly held that Persell's earnings as a watchman precluded a finding of disability. See Tyra v. Secretary, HHS, 896 F.2d 1024, 1029 (6th Cir.1990).
 
 
 25
 Persell has shown no reason why we should conclude that the determination by the administrative law judge is not supported by substantial evidence. We therefore AFFIRM the determinations of the administrative law judge and the district court.