107 F.3d 872
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Susan WARNER, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.
 No. 96-1718.
 United States Court of Appeals, Sixth Circuit.
 Feb. 12, 1997.
 
 Before: MARTIN, Chief Judge; NORRIS and MOORE, Circuit Judges.
 
 ORDER
 
 1
 Susan Warner appeals a district court judgment which affirmed the Commissioner's denial of her application for supplemental security income. The parties have waived oral argument, and the panel unanimously agrees that oral argument is not needed. Fed.R.App.P. 34(a).
 
 
 2
 Warner alleged that she was disabled by neck and back pain. An Administrative Law Judge ("ALJ") found that she had "mild osteoarthritis of the spine, a tiny herniation of C4-5 and degenerative disc disease." He found that Warner's condition was not equivalent to any of the impairments that are described in Appendix 1 to the regulations, even though she could no longer perform her past work. The ALJ also found that Warner was not disabled because she could still perform a limited but significant number of light jobs. The ALJ's opinion became the final decision of the Commissioner on June 6, 1995, when the Appeals Council declined further review.
 
 
 3
 Warner's case was referred to a magistrate judge, who recommended that the Commissioner's decision be affirmed. The district court adopted the magistrate judge's recommendation over Warner's objections, and awarded summary judgment to the Secretary on April 2, 1996. It is from this judgment that she now appeals.
 
 
 4
 Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The scope of our review is limited to an examination of the record only. We do not review the evidence de novo, make credibility determinations nor weigh the evidence.
 
 
 5
 Brainard v. Secretary of Health and Human Servs., 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted). The Commissioner's decision must be affirmed if it is supported by substantial evidence, even if this court might have decided the case differently based on substantial evidence to the contrary. See Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir.1993).
 
 
 6
 On May 24, 1993, Warner was examined by a consulting physician, Dr. Jett, who noted a limited range of motion in her back and neck. However, Dr. Jett also found no evidence of tenderness, muscle spasm or atrophy. He reported that Warner walked with a normal gait and that she had no difficulty walking on heels and toes, squatting and recovering, or getting on and off the examining table. Dr. Jett diagnosed Warner as having probable degenerative disc and joint disease of the cervical and lumbosacral spine.
 
 
 7
 On June 29, 1993, Warner's treating physician, Dr. Webber, reported that Warner's pain prevented her from working, that she had no range of motion, and that she was unresponsive to treatment. He referred her to a neurosurgeon, Dr. Gueramy, who ordered an MRI. Dr. Al-Amari performed MRI testing on January 18, 1994, reporting "a combination of disc herniation and osteophyte formation at C-5 and C-6" as well as "a tiny disc protrusion at C4-5 with minimal impingement." On February 7, 1994, Dr. Gueramy reported that Warner's neck movements were limited in all directions, with neck pain radiating to the shoulders. However, he found no radiation down the arms, no weakness in the upper extremities, no sensory deficit and no reflex changes. He offered the following diagnosis and recommendation:
 
 
 8
 X-rays of the cervical spine were reviewed and showed evidence of degenerative changes and bulging disc at C5-C6, C6-C7 which is most likely causing her symptoms.... Chances are, the patient will end up needing surgery in the future, but at the present time, this is not an urgent situation to consider surgery right away without any insurance. Once her insurance is all straightened out, one can consider surgical treatment if medical management does not help her. She should receive, at the present time, conservative management with anti-inflammatory medications, muscle relaxants and cervical traction.
 
 
 9
 On February 21, 1994, Dr. Webber wrote a note seeking reconsideration of Warner's application for medicaid coverage. He stated that recent tests had shown that Warner had "disc herniations at C5-6 & C6-7 for which Dr. Gueramy recommends surgery--and if not surgery--physical therapy." On March 7, 1994, Dr. Webber opined that Warner would be disabled from working until surgery and physical therapy could be given.
 
 
 10
 Warner now argues that the ALJ erred in finding that she retained the residual functional capacity to perform a limited range of light work, because the ALJ incorrectly found that she had only one disc herniation, instead of three. This argument fails because a claimant's residual functional capacity is not based directly on a precise description of her impairment, but rather on an assessment of her ability to perform work-related activities. See 20 C.F.R. § 416.945.
 
 
 11
 In the present case, the ALJ's finding that Warner could perform a limited range of light work is supported by Dr. Jett's report, which restricted her only from "overhead work, along with frequent bending or lifting greater than 30 pounds." It is also supported by Warner's own testimony, which indicated that she could sit, stand and walk for limited periods of time. Warner testified that she could lift only five pounds without experiencing pain. However, this assertion is contradicted by her testimony that Dr. Webber's restrictions allowed her to lift as much as 15 to 25 pounds. Warner's allegations of disabling pain are also contradicted by a written description that she had given of her activities, which included some housekeeping, shopping and driving a car, as well as bike-riding several times a week. See Bogle, 998 F.2d at 348; Blacha v. Secretary of Health and Human Servs., 927 F.2d 228, 231 (6th Cir.1990) (per curiam). Therefore, the record contains substantial support for the ALJ's finding that Warner could perform the exertional requirements of a limited range of light work, even if it is assumed that the ALJ's description of her impairment was not accurate in all respects.
 
 
 12
 Warner also argues that the ALJ failed to give proper deference to Dr. Webber's opinion that she was totally disabled. A treating physician's opinion is afforded more weight than the opinion of a consultant, but it is not binding if there is substantial evidence to the contrary. Bogle, 998 F.2d at 347-48. Dr. Webber's opinion is not controlling here because at least one of his notes is based on a mischaracterization Dr. Gueramy's neurological report. Dr. Webber states that Dr. Gueramy "recommends surgery--and if not surgery--physical therapy." In fact, Dr. Gueramy recommended an initial regimen of "conservative management with anti-inflammatory medications, muscle relaxants and cervical traction" and then consideration of "surgical treatment if medical management does not help her." Moreover, Dr. Jett's findings clearly indicate that Warner is able to perform a limited range of light work. Finally, Warner's own description of her physical limitations, treating physician's advice and daily activities indicate that she is not totally disabled. Thus, the ALJ gave adequate deference to Dr. Webber's opinion, even though he disagreed with Dr. Webber's conclusion that Warner was totally disabled. See Cutlip v. Secretary of Health and Human Servs., 25 F.3d 284, 286-87 (6th Cir.1994); Bogle, 998 F.2d at 348.
 
 
 13
 Since Warner was unable to perform her past relevant work, the burden shifted to the Commissioner to show that a significant number of other jobs were still available to her. See Tyra v. Secretary of Health and Human Servs., 896 F.2d 1024, 1028 (6th Cir.1990). The ALJ elicited testimony from a vocational expert ("VE") regarding the number of light jobs that were still available to Warner despite her limitations. Warner has not raised any direct challenge to the vocational proof. We note, nonetheless, that the assumptions in the ALJ's hypothetical question to the VE are generally supported by Warner's testimony and Dr. Jett's report. The VE identified 23,000 jobs in the region, that could be performed by a person with the vocational background and work-related limitations that the ALJ described. Hence, there was substantial evidence in the record to support the Commissioner's ultimate determination that Warner was not disabled because a significant number of jobs were still available to her.
 
 
 14
 Accordingly, the district court's judgment is affirmed.