Clifton MAPLE, Plaintiff–Appellant,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.

No. 00–1239.

United States Court of Appeals, Sixth Circuit.

July 12, 2001.

Before BOGGS and CLAY, Circuit Judges; GWIN, District Judge.*

CLAY, Circuit Judge.

Plaintiff, Clifton Powell, appeals from the district court's grant of summary judgment in favor of the Commissioner of Social Security in this suit contesting the Commissioner's denial of Plaintiff's application for social security disability benefits. For the following reasons. we AFFIRM the Commissioner of Social Security.

## BACKGROUND

Plaintiff was 45 years of age, married with no dependent children, and had completed high school at the time he completed his application for social security benefits. He is currently retired from his former job at the Ford Motor Company on non-work-related disability status. Plaintiff was employed by Ford from April 1972 through January 5, 1996 as an automobile assembler. The last job he performed was assembling clutch plates. That job involved sitting most of the time and required no significant lifting; however, it did involve rapid work, requiring the assembly of three hundred parts per hour. Plaintiff performed that job for nearly two years, prior to which he was assigned to install transmission gears. The heaviest weight Plaintiff was required to lift during his final fifteen years of employment with Ford was 50 to 60 pounds, on a job in which he mounted torque convertors on transmissions.

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

On January 5, 1996, Plaintiff found that he was unable to perform his job due to pain and joint problems in his wrists, fingers, elbows, shoulders, back and knees. He indicated that his right hand was worse than his left. Plaintiff claimed that he was unable to hold clutch plates due to this pain and that his dropping of parts slowed productivity on the assembly line. He went to his doctor and was placed on medical leave for a year and his disability retirement became effective August 12, 1997. Since that time, Plaintiff has neither worked nor applied for unemployment compensation.

On May 1, 1996, Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., alleging that he was disabled as of January 8, 1996 due to rheumatism and arthritis. This application was denied initially and upon reconsideration. Plaintiff requested and was granted an administrative hearing. Represented by counsel, Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on September 8, 1997, where he testified on his own behalf. The ALJ also heard testimony from a Vocational Expert ("VE") who testified that Plaintiff could perform a significant number of jobs in the national economy. Based upon the evidence adduced at the hearing, on September 25, 1997, the ALJ issued a written decision finding that Plaintiff was not under a "disability" as defined by the Social Security Act. This decision became final once the Appeals Council denied review on January 15, 1999.

On January 28, 1999, Plaintiff commenced a civil action in the United States District Court for the Eastern District of Michigan pursuant to 42 U.S.C. § 405(g). On cross-motions for summary judgment, United States Magistrate Judge Donald A. Scheer issued a report and recommendation recommending that the Commission-er's denial of benefits be affirmed. Plaintiff filed timely objections on August 27, 1999. On January 19, 2000, United States District Judge Paul Gadola issued an order overruling Plaintiff's objections and adopting the magistrate judge's recommendation as the decision of the court. Plaintiff now appeals from that decision.

## I.

### A. The Medical Record

The medical record contains two one-page physician report forms for Plaintiff's insurance claims completed by Dr. Alan H. Morton, Plaintiff's treating physician. On a form dated January 15, 1996. Dr. Morton claimed that Plaintiff was disabled due to rheumatoid arthritis and osteoarthritis of the knees, with an onset date of January 8, 1996. He further indicated that Plaintiff would be disabled indefinitely. (Tr. 125.) On March 27, 1996. Dr. Morton completed a second insurance claim report in which he repeated his prior conclusions. (Tr. 123.) On neither form did Dr. Morton provide medical records to verify his conclusions.

During the time between Dr. Morton's two reports, Plaintiff was examined by Dr. Gale Northcross of the Midwest Health Center on March 21, 1996. At that time Plaintiff complained that he could hardly walk and that his knees were painful and swelling. But in a brief examination report, Dr. Northcross indicated that despite his reports of pain, Plaintiff had full ranges of motion in his wrists, knees and ankles. Dr. Northcross did report osteoarthritic changes in both of Plaintiff's knees, but none in his hands or proximal joints. Based upon her examination, Dr. Northcross anticipated that Plaintiff would continue to be disabled for a period of one month. (Tr. 124.)

On June 3, 1996, Plaintiff underwent a consultative examination conducted by Dr. S.S. Ahmad on referral from the Michigan State Disability Determination Service. Plaintiff told Dr. Ahmad that he had suffered from joint pain over the past ten years and that blood testing and x-rays had revealed rheumatoid arthritis, mostly involving his knees, wrists, shoulders, elbows and ankles. Plaintiff also complained of stiffness and swelling of his joints, difficulty in walking and rising from a seated position, pain in his wrists when gripping, and difficulty sleeping due to a pain in his right shoulder. In addition, Plaintiff claimed that he had hypertension and suffered from periodic headaches and dizziness. Upon physical examination Dr. Ahmad noted the following:

> BONES AND JOINTS: Can stand erect without support. No loss of lumbar lordosis. No tenderness over lumbar spine. No paraspinal muscle spasm. Patient refused to do doral lumbar flexion for fear of knee pain, which may have given out on him.
>
> Patient had limitation of movement in the knees, wrists, shoulders, ankle joints (please see range of motion). He had tenderness on palpatation of the knee joints. There was no swelling noted. There is no pain, swelling, or limitation of movements in any other joint. No atrophy of the muscles around the joints. There is no tenderness over the joints. There is no muscle spasm. Muscle power is good in all extremities. Grip strength is reduced bilaterally (⅘). He had complained of pain in the wrist when gripping.
>
> Patient can ambulate well without any kind of walking aid. Gait is antalgic. Patient had difficulty with tiptoe, on the heel and tandem gait. He complained of pain in the ankles. He could get on and off of the couch with some difficulty. He can dress and undress. He can open a door, open a jar and dial a telephone.

(Tr. 128.) In an attached chart, Dr. Ahmad indicated that Plaintiff had normal ranges of motion in all of his joints. In addition, he found that Plaintiff had normal hearing and measured his blood pressure as 150/90 and his vision without glasses as $20/30$ in his right eye and $20/25$ in his left eye. Based upon these findings, Dr. Ahmad diagnosed Plaintiff as having rheumatoid arthritis involving multiple joints, from which he obtained some relief by taking the drugs Imuran and Prednisone. He also diagnosed essential hypertension that was well-controlled by medication and produced no evidence of organ damage. Dr. Ahmad further noted a history of alcohol and nicotine abuse.

On June 6, 1996, Dr. Morton issued a report to the Michigan State Disability Determination Service indicating that he had treated Plaintiff since 1986 and diagnosed him with rheumatoid arthritis, significant degenerative osteoarthritis of both knees, and osteoarthritis in both hands. Dr. Morton's report provided the following details:

> The patient has been aggressively treated with disease-modifying medications, most recently Imuran. In addition, he has been treated with low-dose systemic corticosteroids, specifically Prednisone 5 mg QAM. In addition, he has been placed on Darvocet as needed for pain.
>
> In spite of aggressive medical care, he continues to have active synovitis of the hands, wrists and knees, with continued swelling in both knees.
>
> He has some warmth intermittently in his wrists, swelling of his wrists, also the MCP joints of his hands, also his knees. There is a deformity of the hands and wrists, also valgus deformities of both knees. There is significant pain and tenderness in the affected joints. There is some atrophy noted of the hands.

These findings are consistent on a regular basis. With respect to range of motion, there is decreased flexion of both knees, there is also decreased extension and flexion of both wrists.

Rheumatoid factor is positive, but done many years ago. Most recent sed[imentation] rate is 44. Normal in my lab is up to 10–15.

With respect to range of motion, he has significant limitation of extension and flexion in both wrists, fists limited approximately 90%. Again, valgus deformity of both knees. Near full extension. Some decrease in flexion of both knees.

At times in the past, he has had symptoms and signs suggesting carpal tunnel syndrome with positive Tinel's sign. No nerve root irritation tests were performed. X-rays of his hands demonstrate erosive disease of both wrists. X-rays of his knees demonstrate right knee severe osteoarthritis of the lateral compartment with soft tissue swelling and patellofemoral disease. X-ray of the left knee demonstrates osteoarthritis of the lateral compartment with soft tissue swelling. The last right-knee x-ray was done in December of 1994. The last left-knee x-ray was done in September of 1991.

There is definitely a loss of grip strength, perhaps 50%, measured grossly. There is also a loss of fine dexterity, consistent with his active synovitis of his hands and wrists.

I would anticipate that he is able to do things such as open a jar, button his own clothes, etc., but with limited amounts, and if it was not too difficult to do, as again he has active synovitis of the hands and wrists.

He ambulates without an assistive device.

In spite of aggressive medical therapy, he has continued joint pain and disease with progression, as evidenced by the damage to both knees. Again, he has active synovitis of the hands, wrists and knees.

(Tr. 132–33.) Dr. Morton concluded his report by expressing his doubt that Plaintiff could be gainfully employed at the current time or in the near or distant future due to his active synovitis.[1] But he failed to provide any medical records or other documentation for any of these findings.

On June 10, 1997. Dr. Morton responded to a request by Plaintiff's counsel to explain the inconsistencies between Dr. Ahmad's report and his own, as well as to provide an opinion regarding whether Plaintiff met the requirements for disability due to rheumatoid arthritis under the Social Security administrative regulations. Dr. Morton responded by stating:

1. With respect to Dr. Ahmad's report, he does diagnose rheumatoid arthritis affecting multiple joints with severe arthritis on various medications. He did make note of the limitation in movement in knee, wrist, shoulder and ankle joints. He failed to note significant valgus deformity of the right knee. He also failed to note synovitis of his wrists, as well as crepitus of his knees. In addition, this patient has had arthritis for many years and is somewhat stoic; therefore, might not respond to movement of joints by complaining of pain or tenderness, but he does have significant arthritis and active synovitis. *I cannot comment*

---

1. Synovitis is defined as the inflammation of the synovial, or fluid, membrane in a joint accompanied by pain and swelling of the joint. STEDMAN'S MEDICAL DICTIONARY 1392 (1976).

*on specific ranges of motion of his joints, as I generally do not measure these.*

2. Mr. Maple has an elevated sedimentation rate, last performed on June 13, 1997, at 43 (0–10 is normal range for men). His sedimentation rate generally ranges between 40–45. In addition, he has had a positive rheumatoid factor in the past.

3. Not only does Mr. Maple have active rheumatoid arthritis, as evidenced by synovitis of his hands/wrists varying in intensity from visit to visit, but he also has significant degenerative osteoarthritis of his knees. I performed an x-ray of his right knee in December of 1994, which demonstrated severe osteoarthritis of the lateral component with mild patellofemoral disease. X-rays of his hands and wrists, at that time, demonstrated erosive changes of both wrists.

(Tr. 136 (emphasis added).) Dr. Morton closed his letter by stating "[t]here is no doubt in my mind that Mr. Maple meets the criteria for social security disability." Again, he provided no documentation supporting any of the claims made in his report.

On June 25, 1996. Dr. William Joh, a state agency physician, examined Plaintiff and completed an assessment of his physical capacity ("residual functional capacity" or "RFC"). In his report, Dr. Joh indicated that Plaintiff could perform the following physical undertakings: lift twenty pounds occasionally and ten pounds frequently; stand and/or walk approximately six hours in an eight-hour work day; sit (with normal breaks) for approximately six hours in an eight-hour workday, and push and pull (including operation of hand and/or foot controls) without limitation. (Tr. 92.) Handwritten notes on this report stated that there were "no longer signs of acute or active arthritis" and that Plaintiff had good ranges of motion in his knees and wrists. Dr. Joh further indicated that Plaintiff had no impairment of manual dexterity and that his walk, without a cane, was antalgic. On September 5, 1996, agency physician Dr. Saadat Abbasi concurred in Joh's assessment. (Tr. 98.)

On July 11, 1997, Dr. Hampton J. Mansion completed a brief report indicating that Plaintiff had been a patient of his since 1992 and that Plaintiff saw him on a regular basis for management of hypertension. Dr. Mansion claimed that he diagnosed Plaintiff as having arthritis several years earlier and had referred him to Dr. Morton, who had since taken over management of Plaintiff's condition. Despite the fact that Dr. Mansion had not examined Plaintiff for his arthritic condition in several years, he opined that Plaintiff's prognosis was poor and that his arthritis prevented him from working in any occupation. (Tr. 137.) He further claimed that Plaintiff's condition was permanent and that it could worsen despite proper medical care. But, similar to Dr. Morton, Dr. Mansion provided no documentation to support his conclusions. Ironically, he indicated that Dr. Morton would be able to provide "much more information regarding the arthritis." (Tr. 138.)

B. Plaintiff's Testimony

At the administrative hearing, Plaintiff told the ALJ that he spent most days listening to the radio, watching television and sitting in his kitchen looking out of the window. He acknowledged that he was able to tend to his personal needs but sometimes required his wife's assistance in dressing or bathing. He also claimed to need help with his shoes, socks and combing his hair. Plaintiff stated that he occasionally drove a car but that his wife did most of the driving, and he did not assist

in any housework, nor did he have any hobbies. He claimed that he could walk 50 feet and stand for approximately 15 minutes before his knees began to hurt and that he could sit for about three or four hours and then had to get up and stretch his legs for about five minutes. Plaintiff also testified that he had difficulty stooping, bending and climbing stairs because of his back and knee pain. In addition, he stated that he had difficulty balling his fists and picking things up with his right hand and that he was able to lift no more than three pounds. Plaintiff also claimed the same weight limitation in his ability to carry objects from one place to another. Furthermore, Plaintiff testified that he had trouble pushing and pulling because of pain in his elbows and wrists.

Plaintiff testified that he received no medical treatment other than medications and that he had not been hospitalized as an inpatient for any reason. He saw his treating physician, Dr. Morton, once a month. During those visits Dr. Morton typically examined Plaintiff's knees, administered an injection and drew blood samples. At times Plaintiff would receive an injection in his wrists and on other occasions he would receive the shot in his fingers or elbows.

Plaintiff wears prescription glasses but claimed to have some difficulty with his vision. Yet, he stated that he had not discussed this matter with a doctor recently. Plaintiff also testified that he had difficulty hearing in his left ear, a problem he claimed to have discussed with his doctor who checked his hearing annually while Plaintiff was still employed by Ford.

C. The ALJ's Decision

After reviewing the medical evidence and the testimony at the administrative hearing, the ALJ determined that Plaintiff suffered from a severe musculoskeletal impairment and well controlled hypertension. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one located in the Listing of Impairments in the appendix to the federal regulations. The ALJ also found that Plaintiff's subjective complaints of pain and limitations were unsupported by the objective medical evidence and were exaggerated and not fully credible. He presented the vocational expert ("VE") with a hypothetical that took into consideration Plaintiff's age, education and work experience, as well as his difficulty in picking up objects with his dominant right hand and the need for a sit/stand option. Based upon this hypothetical RFC, the VE testified that Plaintiff could perform approximately 8,000 light exertional level jobs in the areas of visual inspection and packaging in Southeastern Michigan, where Plaintiff lived, and double that amount statewide. The ALJ then posed the same hypothetical but changed the exertional level from light to sedentary. This time the VE testified that Plaintiff could perform approximately 7,000 jobs in Southeastern Michigan, including 4,000 unskilled clerically related positions such as ticket taker, security monitor or information clerk. Again, the number of jobs doubled when considering positions statewide. Importantly, however, the VE testified that if he were to accept Plaintiff's testimony as accurate and truthful in all respects, all of these jobs would be precluded.

Despite finding that Plaintiff could no longer perform past relevant work, the ALJ found, based upon the testimony of the VE, that Plaintiff could perform a significant number of jobs in the regional economy. He thus determined that Plaintiff was not under a disability as defined in the Social Security Act and was not therefore entitled to benefits.

## II.

This court applies a *de novo* standard when reviewing a district court's grant of summary judgment. *Soper v. Hoben*, 195 F.3d 845, 850 (6th Cir.1999). However, we review the denial of a summary judgment motion only for abuse of discretion. *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir.1994). Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The reviewing court must consider whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reviewing cross-motions for summary judgment, the court must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991).

Absent a determination that the Commissioner failed to apply the proper legal standards or that his findings of fact were not supported by substantial evidence in the record, we must affirm the Commissioner's decision. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990). A finding of substantial evidence must be "based on the record as a whole" and must "take into account whatever in the record fairly detracts from its weight." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir.1990) (citations omitted). In reviewing the case for substantial evidence, the court may not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility. *Walters*, 127 F.3d at 387. The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different result. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986). Even if there is evidence on the other side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994).

## III. DISCUSSION

A claimant is considered disabled if he cannot perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 20 C.F.R. §§ 404.1501; *see also Abbott*, 905 F.2d at 923.[2] The burden rests with the claimant to prove that he is disabled within the meaning of the Social Security Act. *Tyra*, 896 F.2d at 1028.

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential evaluation. First, if a claimant is working and engaged in substantial gainful activity, he will not be considered disabled. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment or combination of impairments that significantly limit her ability to do

---

2. This requirement creates a two-pronged test for establishing that an individual is disabled. First, the claimant must establish the existence of a medically determinable physical or mental impairment that can be expected to result in death or which has lasted for a continuous period of not less than twelve months. In addition, the claimant must show that these recognized impairments render him unable to engage in any substantial gainful activity.

basic work activities, or he will not be considered disabled. 20 C.F.R. § 404.1520(c). Third, if the claimant has an impairment that meets or equals one of the impairments listed in the regulations, the claimant is presumed to be disabled without further analysis. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has the residual functional capacity to perform "past relevant work" he is not disabled. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 416.920(f). If an individual cannot perform "past relevant work," the burden shifts to the Commissioner at step five to identify jobs in the national economy that the claimant may perform, taking into account the claimant's residual functional capacity, age, education, and past work experience. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir.1994); 20 C.F.R. § 404.1520(f). If the Commissioner finds that the claimant is disabled or not disabled at any point in that five-step process, he does not proceed further. 20 C.F.R. § 404. 1520(a).

In the instant case, the ALJ went through the entire 5–step analysis. At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since January of 1996. The ALJ next found that Plaintiff suffered from a severe musculoskeletal impairment and well controlled hypertension, but that he did not have an impairment or combination of impairments listed in, or medically equal to, one located in the federal regulations. The ALJ determined that, due to his condition. Plaintiff could not perform his past relevant work as an automobile assembler given the bilateral dexterity required for the job. However, at the next step, the ALJ posed hypotheticals to the VE which took into account Plaintiff's age, education, background, and residual functional capacity as well as his purported physical limitations. The VE's responses revealed a significant number of jobs in the national economy that Plaintiff could perform.

Thus, the ALJ determined that Plaintiff was not under a "disability" as defined in the Social Security Act.

Plaintiff contends on appeal that the ALJ's finding that he did not meet the requirements for disability due to rheumatoid arthritis was not supported by substantial evidence. Specifically, Plaintiff claims that (1) the ALJ's decision contradicted the medical evidence of record; (2) the ALJ used improper legal standards in assessing Plaintiff's credibility; (3) the ALJ failed to accord proper deference to the findings of Plaintiff's treating physician; and (4) the ALJ failed to fulfill his duty to develop the administrative record. We find all of these claims to be without merit.

A. Requirements for Listing of Impairment 1.02.

The administrative regulations require the following to show disability due to active rheumatoid arthritis or other inflammatory arthritis:

A. History of persistent joint pain, swelling, and tenderness involving multiple major joints ... with signs of joint inflammation (swelling and tenderness) on current physical examination despite prescribed therapy for at least 3 months, resulting in significant restriction of function of the affected joints, and clinical activity expected to last at least 12 months; *and*

B. Corroboration of diagnosis at some point in time by either:

1. Positive serologic test for rheumatoid factor; or

2. Antinuclear antibodies; or

3. Elevated sedimentation rate; or

4. Characteristic histologic changes in biopsy of synovial membrane or subcutaneous nodule (obtained independent of Social Security disability evaluation).

20 C.F.R. Pt. 404, subpt. P, app. 1 (Listing of Impairment 1.02) (emphasis added).

■ Plaintiff claims that he produced evidence to show that he met these requirements. In support of his claim, Plaintiff notes that he had an elevated sedimentation rate of at least 43 as well as a history of positive rheumatoid factor. Although these observations are largely unrefuted by the Commissioner, they are only sufficient to meet the requirements of part B of Listing of Impairment 1.02. In order to be considered disabled under the listing, Plaintiff must also demonstrate that he fits the criteria of part A of the listing, which he has failed to do.

Part A contains three requirements. First, the claimant must demonstrate a history of persistent joint pain, swelling, and tenderness involving multiple major joints. Second, the listing requires the claimant to establish signs of joint inflammation on current examination despite prescribed therapy for at least three months. Third, the claimant must show significant restriction of function of the affected joints. *McGuire v. Commissioner of Social Security,* No. 98–1502, 1999 WL 196508, at *4, 178 F.3d 1295 (6th Cir. Mar. 25, 1999) (*per curiam*). Plaintiff notes that Dr. Morton found active synovitis of the hands, wrists and knees, continued pain and swelling of the knees, intermittent warmth of the wrists, and swelling of the wrists, MCP joints of the hands and knees, as well as a decreased range of motion in both knees and wrists. But a wealth of evidence exists on the record to refute Plaintiff's claims. First of all, as the Commissioner notes, Dr. Morton's initial reports dated January 15, 1996 and March 27, 1996, though diagnosing rheumatoid arthritis, failed to document pain, swelling or tenderness in the affected joints; nor do these reports reflect a significant reduction in function of these joints as is required by part A of Listing of Impairment

1.02. On June 6, 1996, Dr. Morton did issue a report indicating that Plaintiff did have pain, swelling and tenderness in his hands and knees. But a report completed by examining physician Dr. Ahmad just a few days earlier on June 3, 1996 found no tenderness on palpatation of the knee joints, no swelling of the knees, and no pain or swelling in any other joints. This result indicates that Plaintiff did not have persistent pain and swelling as he would have this Court believe.

Moreover, even if Plaintiff did have pain and swelling, there is no indication in the medical evidence that he had significantly reduced function in any of his joints. Plaintiff notes that Dr. Ahmad found that he had limited ranges of movement of the knees, wrists, shoulders and ankle joints. But these findings do not amount to a conclusion that Plaintiff had a significantly reduced function in these joints. Indeed, Dr. Ahmad's charts reveal that Plaintiff's range of motion was within the normal range for all of his major joints. Meanwhile, Dr. Morton admitted that he did not generally measure the range of motion in specific joints; he could not therefor refute Dr. Ahmad's findings by reference to medical evidence.

Dr. Ahmad also found that Plaintiff had good muscle strength in his hands and legs, noting that Plaintiff could dress and undress himself, open a jar and a door, dial a telephone and even get onto and off of an examination table. Even Dr. Morton's examinations confirmed this result. We have previously found that the ability to perform these types of functions indicates that a claimant does not suffer from a significant restriction of function. *Mount v. Commissioner of Social Security,* No. 98–1907, 1999 WL 993903, at *8, 198 F.3d 246 (6th Cir. Oct. 20, 1999) (*per curiam*) (finding that observations of "fairly good fist and grip" supported the Commission-

er's finding of no significantly reduced function).

The only evidence that Plaintiff had a significant restriction of function came from Plaintiff's own testimony regarding his pain and functional limitations, which the ALJ found not to be credible. Based on the foregoing observations, we believe the Commissioner's decision that Plaintiff did not meet the requirements of Listing of Impairment 1.02 was supported by substantial evidence.

## B. Treating Physician's Opinion

■ Plaintiff also argues that in finding that he failed to meet the requirements of Listing of Impairment 1.02, the ALJ did not give sufficient weight to his treating physician's opinion. He claims that the ALJ had no basis for discrediting Dr. Morton's conclusions and accuses the ALJ of substituting his own speculation as to Plaintiff's RFC for the true medical evidence on the record.

■ As a general matter, "the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir.1988) (citations omitted). However, the opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings. *Houston v. Secretary of Health and Human Servs.*, 736 F.2d 365, 367 (6th Cir.1984), and is not contradicted by substantial evidence to the contrary. *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (*per curiam*). Thus, the Commissioner is not bound by the opinion of a treating physician when the opinion is contradicted by objective medical evidence. *Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir.1992). Furthermore, the ALJ is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(e)(1). Instead, the ALJ may reject such determinations when good reasons are identified for not accepting them. *See Hall*, 837 F.2d at 276; *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir.1986). In the instant case, the ALJ explained that he gave little weight to Dr. Morton's medical opinions because "[h]is statement . . . is not well-supported by acceptable medical evidence and is found to be contradicted by other evidence and inconsistent with the evidence as a whole. . . ." (Tr. 26–27.)[3] We find no error in this assertion.

First, Dr. Morton's opinions were largely conclusory. As we previously discussed, although Dr. Morton diagnosed Plaintiff with rheumatoid arthritis, bilateral knee degenerative osteoarthritis, hand osteoarthritis, and active synovitis of the hands, wrists and knees, he provided no documentation reflecting synovial fluid draining or laboratory study results such as blood testing or x-ray studies to support these diagnoses. In addition, although Dr. Morton opined that Plaintiff would have a serious problem working, his reports do not reveal Plaintiff's specific functional restrictions. For example, despite asserting that Plaintiff had lost fine dexterity in his hands, Dr. Morton could not indicate or even accurately estimate the specific degree of this loss because he did not measure Plaintiff's range of motion in specific joints as had

---

**3.** A treating physician's opinion on the nature and severity of a claimant's impairment is entitled to controlling weight only when the following conditions are met: (1) the source giving the opinion is a "treating source" as defined in the regulations; (2) the opinion is well supported by medically-acceptable clinical and laboratory diagnostic techniques; and (3) the opinion is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

Dr. Ahmad. Even excusing this lack of documentation. Dr. Morton's own findings seem to undermine his conclusions. For example, his acknowledgment that Plaintiff could perform a variety of functions such as dressing himself and opening a jar suggests that Plaintiff did not have significantly reduced function in the affected joints.

Plaintiff contends that in the absence of objective clinical or laboratory findings, it must be presumed that the conclusion of a treating physician rests upon his experience with the patient and his findings. *Stieberger v. Bowen,* 801 F.2d 29, 31 (2d Cir.1986). However, there is no evidence detailing the doctor-patient relationship between Plaintiff and Dr. Morton. Despite stating that he had treated Plaintiff since 1986, Dr. Morton provided no documentation such as office progress reports or notes that would suggest the existence of an ongoing treatment relationship. In addition, Dr. Mansion, who allegedly referred Plaintiff to Dr. Morton, can only trace his interaction with Plaintiff to 1992, well after Dr. Morton allegedly began treatment. Furthermore, as we have already discussed, a large amount of evidence on the record contradicts Dr. Morton's conclusions.

Based upon this evidence, the ALJ correctly determined that Dr. Morton's opinion that Plaintiff met the Listing of Impairment 1.02 was entitled to little weight. In addition, to the extent that Plaintiff contends that Dr. Morton's opinion as to RFC was not accorded proper deference, his argument also fails for the same reasons.

C. Remaining Claims

Plaintiff also argues on appeal that the district court improperly found that his subjective complaints of pain were exaggerated and therefore not credible. But inasmuch as Plaintiff failed to raise this claim before the district court, he has not properly preserved the issue for review on appeal. *Davis v. Secretary of Health and Human Servs.* 915 F.2d 186, 189 (6th Cir.1990); *Young v. Secretary of Health and Human Servs.,* 925 F.2d 146, 149 (6th Cir.1990) (both holding that a social security claimant cannot raise an issue before the court of appeals that was not raised before the district court).

Plaintiff has also waived the argument that the ALJ failed in his duty to further develop the administrative record. Not only did he fail to raise this issue before the district court, but he also failed to raise the issue at the administrative level. This Court will not review the ALJ's decision with respect to issues not properly raised at the administrative level. *Consolidation Coal Co. v. McMahon,* 77 F.3d 898, 903 (6th Cir.1996); *Hix v. Director, Office of Workers' Compensation Programs,* 824 F.2d 526, 527–28 (6th Cir. 1987).

## CONCLUSION

Based on the above analysis, we believe that the Commissioner properly found that Plaintiff did not suffer from a disability as defined under Listing of Impairment 1.02. The medical evidence in favor of such a finding far outweighs the conclusory statements and unsupported diagnoses made by Plaintiff's treating physician, which were properly discounted. We therefore hold that the Commissioner's decision was supported by substantial evidence. Accordingly, we AFFIRM the Commissioner's denial of benefits.